# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| D.M., a minor, by and through his next friend and natural guardian, KELLI MORGAN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18-2158-KHV-KGG |
| WESLEY MEDICAL CENTER LLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM & ORDER ON MOTION TO STRIKE

Before the Court is the "Motion to Strike Immaterial, Impertinent and Scandalous Matters from Plaintiff's Complaint" filed by Defendant Jennifer Chambers-Daney (Doc. 41) and the "Motion to Strike" filed by Defendant Bridget Grover (Doc. 60). After review of the relevant filings, including the submissions of the parties and Plaintiff's Complaint, the Court **GRANTS in part and DENIES**

**in part** Defendant Chambers-Daney's motion (Doc. 41) and **DENIES** the motion filed by Defendant Grover (Doc. 60).[1]

## INTRODUCTION

Striking material in a pleading under Fed. R. Civ. P. 12(f) because it is "redundant, immaterial, impertinent, or scandalous" is "disfavored as a drastic remedy." ***Doe v. USD No. 237, et al.***, 16-2801-JWL-TJJ, 2017 WL 3839416 (D. Kan. Sept. 1, 2017). The Complaint filed by Plaintiff tests the limits of this caution. Some of the material in the Complaint which is the subject of this motion is far removed from, or completely immaterial to, the issues plead in this case. The material is presented in a way the Court perceives as primarily designed to scandalize Defendant Chambers-Daney, harm her general reputation, or spectacularize the case to the public. The Court will grant the motion to strike some of this material, but is constrained by the possibility of some possible relevance to the claims, and the narrow standard, to deny the motion as to some materials. The denial should not be interpreted as the Court's approval of Plaintiff's tactic.

## BACKGROUND

---

[1] Defendant Via Christi Hospitals Wichita, Inc. also moves to strike the same portions of Plaintiff's Complaint and adopts and incorporates the arguments contained in Defendant Chambers-Daney's memorandum. (*See* Doc. 53.) The Court thus **GRANTS in part** Defendant Via Christi's motion as well.

**A.     Medical Information and Care.**

Plaintiff, through his natural guardian and next friend, filed his federal court Complaint on April 9, 2018, alleging medical malpractice against Defendants resulting from the medical care he received on March 5 and 6, 2017. Plaintiff alleges that on March 6, 2017, he "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.)

Plaintiff alleges that in the days leading up to the stroke, he "suffered headache, dizziness, nausea, unbalance, vomiting and lethargy." (*Id*., at 6.) After suffering head pressure that caused him to clutch the back of his head and scream "uncontrollably," Plaintiff's parents took him to the emergency room at Defendant Wesley Medical Center-Woodlawn ("Wesley"), in Wichita, Kansas, on March 5, 2017. (*Id*., at 7.) His triage notes indicate "headache, dizziness, nausea, lethargy and unbalance with no fever," "one bout of vomiting today," and that he had "recently developed slurred speech, photophobia, weakness and his extremities were limp." (*Id*., at 8.)

Plaintiff was seen by a physician's assistant, Defendant Bridget Grover, at Wesley, but not an actual doctor. Plaintiff contends that Defendant Grover merely performed a "cursory physical examination . . ." (*Id*., at 8.) Defendant Grover was

supervised by Defendant Dr. Gregory Faimon.  After Plaintiff's strep test came back positive, Defendant Grover prescribed Plaintiff with an antibiotic and he was discharged from Wesley at 7:06 p.m. on March 5, 2017.  (*Id*.)  No neurological assessment was ordered by Defendant Grover and none occurred at that time.  (*Id*.)  Plaintiff alleges that Defendants Grover and Faimon "deviated from the accepted standard of care for their care and treatment" of Plaintiff.  (*Id*., at 11.)

Plaintiff alleges that his condition "continued to deteriorate" after discharge from Wesley.  (*Id*.)  His parents took him to the emergency room at Defendant Via Christi Hospital-St. Francis ("Via Christi"), arriving at approximately 2:22 a.m. on March 6, 2017.  (*Id*., at 12.)  Plaintiff alleges that his mother notified Via Christi personnel of his "sudden onset of headache, nausea, intractable vomiting, lethargy, weakness, unbalance, dizziness, slurred speech, photophobia, inability to respond to basic questions, inability to walk, knee joint pain, and D.M.'s previous presentation to the Wesley emergency room."  (*Id*.)  Plaintiff contends that Defendant Aaron Kent triaged Plaintiff and "failed to note [his] other concerning symptoms of dizziness, debilitating headache, inability to respond to basic questions, slurred speech, photophobia, difficulty ambulating, weakness, lethargy and unbalance," which Plaintiff contends "are clear indicators for an immediate neurological assessment and CT scan of the head."  (*Id*.)

4

Plaintiff was triaged to non-urgent general care. (*Id*., at 13.) He alleges that after waiting for two hours, he was seen by Defendant Chambers-Daney, an advanced registered nurse practitioner ("ARNP"). Chambers-Daney charted that Plaintiff

> presents with sore throat and PT (patient) has had a sore throat for unknown time . . . was seen at Wesley this eve (evening) 6 pm DX (diagnosed) strep. PT sent home and then mom states he has been vomiting every hour and not able to keep meds down pain meds. The onset was unknown. The course/duration is constant. Location: pharynx/throat . . .

(*Id*., at 14.) Plaintiff contends that Defendant Chambers-Daney admitted him for observation, but "failed to chart that [he] suffered from debilitating headache, inability to walk, severe lethargy, weakness, dizziness, slurred speech, photophobia, inability to answer basic questions, and severe unbalance." (*Id*.) Plaintiff alleges that his symptoms were "a clear indicator for an immediate neurological assessment and CT scan of the head," but that Defendant Chambers-Daney "failed to perform a neurologic examination to rule out head pathologies," never consulted with a physician or specialist, "and failed to order imaging." (*Id*.)

Plaintiff was ultimately seen by two family practice residents, Defendant Dr. Stephanie White and Defendant Dr. Connor Hartpence, at 5:18 a.m. (*Id*.) Plaintiff alleges that both residents were supervised in part by Defendant Dr. Bala Bhaskar Reddy Bhimavarapu. (*Id*.) Plaintiff contends that "[d]espite [his]

5

deteriorating condition and symptoms, these Defendant doctors failed to perform a neurological assessment and order a CT scan of the head." (*Id*., at 15.) Plaintiff alleges that his intracranial pressure continued to build, resulting in a "medically-preventable stroke as a result of unsustainable intracranial pressure" at approximately 10:00 a.m. on March 6, 2017. (*Id*.)

**B.     Portions of Plaintiff's Complaint at Issue.**

Plaintiff's federal court Complaint criticizes Defendant Grover's demeanor. (Doc. 1, at ¶¶ 57, 58.) It references a social media posting on Defendant Grover's Facebook page in which she expressed agreement with a criticism of those who are seen to abuse emergency room care. (*Id*., at ¶ 58.) The Complaint the discusses that Defendant Grover was found to have "committed fraud or misrepresentation" in an attempt to renew her medical license. (*Id*., at ¶¶ 59-61.)

The Complaint also references, and includes photographic inserts of, Defendant Chambers-Daney's social media postings on Facebook. (*See* Doc. 1, at ¶¶ 142-152, 198.) The postings consist of and/or reference cartoons, jokes, and humorous or satirical internet memes – mostly composed by other individuals – that Defendant Chambers-Daney shared on her Facebook wall.[2] The postings reference topics such as job frustrations, job duties (including patient charting),

---

[2] The Court expresses no opinion about the success of any of the intended "humor," much of which is, at the least, in poor taste.

interactions with patients, disdain for children, and drinking. Many of the postings include profanity and often display what would could be considered "dark" humor.

Plaintiff contends that Defendant Chambers-Daney's posts "are a direct reflection of her unprofessional attitude, complete lack of training and qualifications, and her inability to be a patient advocate." (*Id*., at ¶ 149.) Plaintiff continues that the posts "reflect a complete lack of supervision and training by Defendant Via Christi of its health care professionals." (*Id*., at ¶ 150.) Plaintiff also contends that the posts "reflect the standard of care and conduct acceptable by Defendant Via Christi of its health care professionals." (*Id*., at ¶ 151.) Finally, Plaintiff contends that Defendant Chambers-Daney's "attitude toward her profession, her job, her patients, and children are an open display of and explanation for her wanton and willful failures in harming D.M." (*Id*., at ¶ 198.)

## ANALYSIS

**A.     Standards Under Fed.R.Civ.P. 8(a) and 12(f).**

Pursuant to Fed.R.Civ.P. 8(a), "a pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." ***Mann v. Boatright***, 477 F.3d 1140, 1147 (10th Cir. 2011). "'Something labeled a complaint but written more as a press release, prolix in

7

evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.'" (*Id*., at 1148 (quoting ***McHenry v. Renne***, 84 F.3d 1172, 1180 (9th Cir.1996).) "[I]n extreme circumstances," an unnecessarily detailed pleading "may even warrant a dismissal for excessive verbosity (which is, itself, a violation of Rule 8(a)'s 'short and plain' requirement)." Federal Civil Rules Handbook, 342-43 (2018). The sections in the Complaint complained of in the Chambers-Daney motion violate the spirit of this provision. None are necessary to state a legal claim. However, this alone does not require the striking of particular sections of the Complaint.

Motions to strike pleadings, either in part or in total, are governed by Fed.R.Civ.P. 12(f). The rule provides that the court "may strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter."

> Because striking an entire pleading, or a portion thereof, is a drastic remedy, and because a motion to strike may often be brought as a dilatory tactic, motions to strike are generally disfavored.
> This Court will usually deny a motion to strike unless the allegations have no possible relation to the controversy and are likely to cause prejudice to one of the parties. While motions to strike are generally disfavored, the decision to grant a motion to strike lies within the court's sound discretion.

***A.H. v. Knowledge Learning Corp.***, No. 09-2517-DJW, 2011 WL 1766067, at *1 (D. Kan. May 9, 2011) (citations omitted).

A matter is considered "immaterial" if it "has no essential or important relationship to the claim for relief." ***Dean v. Gillette***, 2004 WL 3202867, at *1 (D. Kan. June 8, 2004). It is considered "impertinent" if it does "not pertain, and [is] not necessary, to the issues in question." ***CitiMortgage, Inc. v. JustMortg., Inc.***, 2013 WL 6538680, at * 7 (E.D. Mo. Dec. 13, 2013). A "scandalous" matter is one that is ""irrelevant and 'degrade[s] defendants' moral character, contain[s] repulsive language, or detract[s] from the dignity of the court.'" ***Dean***, 2004 WL 3202867, at *3. "Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id*. (citing ***Foster v. Pfizer Inc.***, No. 00-1287-JTM, 2000 WL 33170897, at *2 (D.Kan. Dec.12, 2000)).

**B.     Allegations Against Defendant Chambers-Daney.**

Defendant Chambers-Daney contends that Plaintiff's "Complaint is full of irrelevant and mean-spirited allegations that take obviously facetious social media postings out of context to harass, distract, and prejudice" her. (Doc. 42, at 2.) Defendant Chambers-Daney continues that her "social media use has nothing to do with the issue of whether her treatment of D.M. met the standard of care or caused D.M.'s injuries." (*Id*.) Specifically, Defendant moves to strike paragraphs 142-152 and 198 of the Complaint, which consist of and/or reference cartoons, jokes,

9

and humorous or satirical internet memes – composed by other individuals – that Defendant Chambers-Daney has shared on her Facebook wall.

Plaintiff argues that Rule 12(f) cannot be used to "'challenge the factual support for an allegation.'" (*Id.*, at 8 (citing ***Nwakpuda v. Falley's, Inc.***, 14 F. Supp. 2d 1213, 1215-16 (D. Kan. 1998).) Even so, Plaintiff is not permitted to include unnecessary, scandalous, and unduly prejudicial information in his Complaint. The allegations contained in ¶¶ 142-152 and 198 are unrelated to the "short and plain statement of claim" requirements of Fed.R.Civ.P. 8(a). Rather, these allegations constitute something akin to a press release or a newspaper editorial. *See* ***Mann v. Boatright***, 477 F.3d 1140, 1147 (10th Cir. 2011) (citation omitted).

The Court's task here is to parse what sections are pertinent or material to the claims in the case and what sections are simply scandalous. The trial judge will determine whether any of this evidence is admitted at trial, but the instant task of this Court is to determine whether the material advances the proper goal of pleading the Plaintiff's case or is included only to harm Defendant Chambers-Daney personally. The Court will, therefore, review the paragraphs at issue.

The memes referenced in paragraph 143 are a "comic strip" referring to Defendant Chambers-Daney personally, and reference her refusal or inability to fill out a medical chart. While the context of this post, missing from the Complaint,

may render it irrelevant at trial, it is not immaterial or impertinent in the Complaint. Similarly, the reposted memes about client complaints in paragraph 144, although likely of limited probative use at trial, are not so beyond the subject matter of the Complaint as to be subject to a motion to strike. Plaintiff's paragraphs 142 and 149-51, which references Defendant's attitude, training and treatment of patients, can be read as a reference to paragraphs 143 and 144. As such, the Court declines to strike paragraphs 142, and 149-51.

The remaining paragraphs complained of, however, are plainly included only to embarrass Defendant Chambers-Daney. Paragraph 145 (memes about job dissatisfaction), paragraph 146 (memes about children), paragraph 147 (memes about general attitude) and 148 (memes about drinking) are so unrelated to the complaint allegations as to be, in the context of the Complaint, simply unmitigated personal attacks. Paragraphs 152 and 198, specifically referencing and repeating offending paragraphs, are thereby tainted.

The information in paragraphs 145-148, 152 and 198 in Plaintiff's Complaint is not necessary to the issues in question in this case. *CitiMortgage*, 2013 WL 6538680, at *7. The inclusion of this information confuses the issues in this case and detracts from the dignity of the Court. See *Dean*, 2004 WL 3202867, at *1 (citations omitted) and *CitiMortgage*, 2013 WL 6538680, at *7. In other words, paragraphs 145-148, 152 and198 of Plaintiff's Complaint are impertinent,

scandalous, and unfairly prejudicial to Defendant Chambers-Daney pursuant to Fed.R.Civ.P. 12(f). As such, Defendant Chambers-Daney's Motion to Strike (Doc. 41) is **GRANTED** as to those provisions (¶¶ 145-152, 198) but **DENIED** as to paragraphs 142-144 and 149-51.[3]

C.   **Allegations Against Defendant Grover.**

Defendant Grover argues that the information regarding her demeanor and Facebook postings is irrelevant and "can only be intended to foment dislike" for her, which would create undue prejudice and confusion for the jury. (Doc. 60, at 5-6.) She continues that the information regarding the finding of fraud by the Kansas Board of Healing Arts is "designed to harass, embarrass and cast a derogatory light" on her. (*Id*., at 6.) As such, Defendant Grover asks the Court to strike paragraphs 57-61 of Plaintiff's Complaint. Defendant opposes the motion, arguing that "the allegations have a possible relation to the controversy." (Doc. 68, at 2.)

---

[3] In reaching this decision, the undersigned Magistrate Judge is not opining as to the admissibility of this information at trial. "The issue on a Rule 12(f) motion, however, is not admissibility of evidence at trial, but rather immateriality, impertinence, and scandalousness of allegations in the complaint." *Sawo v. Drury Hotels Co., LLC*, No. 11-2232-JTM-GLR, 2011 WL 3611400, at *2 (citing *Lane v. Endurance Am. Specialty Ins. Co.*, No. 10-401-MOC-DCK, 2011 WL 1343201, at *3 (W.D. N.C. Apr. 8, 2011) and *Goodman Distribution, Inc. v. Haaf*, No. 4:10-CV-806-CAS, 2010 WL 4117379, at *10 (E.D. Mo. Oct. 19, 2010)).

Plaintiff's allegations regarding Defendant Grover's demeanor on the day in question (Doc. 1, at ¶ 57) are neither irrelevant nor unduly prejudicial. While Defendant Grover's Facebook post (*Id.*, ¶ 58) may or may not be admissible at trial, it is not facially irrelevant, unfairly prejudicial, or misleading in the Complaint, as Defendant Grover argues. (*See* fn.3, *supra*.) Similarly, the allegations regarding the fraud Defendant Grover allegedly committed in attempting to renew her medical license (Doc. 1, at ¶¶ 59-61) are not so beyond the subject matter of the Complaint as to be subject to a motion to strike. As such, Defendant Grover's Motion to Strike paragraphs 57-61 of Plaintiff's Complaint (Doc. 60) is **DENIED**.

IT IS THEREFORE ORDERED that Defendant Chambers-Daney's Motion to Strike (Doc. 41) is **GRANTED in part** and **DENIED in part** as more fully set forth above while the Motion to Strike filed by Defendant Grover (Doc. 60) is **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 5th day of September, 2018.

> S/ KENNETH G. GALE
> KENNETH G. GALE
> United States Magistrate Judge