# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D.M., a minor, by and through his next friend and natural guardian, KELLI MORGAN, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 18-2158-KHV-KGG |
| WESLEY MEDICAL CENTER LLC, *et al.*, ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM & ORDER ON MOTION FOR ORDER
## FOR RELEASE OF PROTECTED HEALTH INFORMATION

Before the Court is the "Joint Motion for Order for Release of Protected Health Information and Allowing *Ex Parte* Interviews with Treating Physicians and Other Health Care Providers" filed by Defendants. (Doc. 193.) After review of the parties' submissions, the Court **GRANTS** Defendant's motion.

## BACKGROUND

**A.     Medical Information and Care.**

1

Plaintiff, through his natural guardian and next friend, filed his federal court Complaint on April 9, 2018, alleging medical malpractice against Defendants resulting from the medical care he received on March 5 and 6, 2017. Plaintiff alleges that on March 6, 2017, he "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.) The facts of this case are more thoroughly summarized in this Court's Order on Defendant Chambers-Daney's "Motion to Strike Immaterial, Impertinent and Scandalous Matters from Plaintiff's Complaint" and Defendant Grover's "Motion to Strike." (Doc. 116, at 3-6.) That summary is incorporated herein by reference.

Currently before the Court is the "Joint Motion for Order for Release of Protected Health Information and Allowing *Ex Parte* Interviews with Treating Physicians and Other Health Care Providers" filed by all Defendants. (Doc. 193.) Plaintiff argues that the Order, as proposed, is improper because certain treating physicians are located in Missouri (where *ex parte* communications by defense counsel with treating physicians are prohibited), several of D.M.'s treating physicians will also be identified as retained experts, and certain language proposed by Defendants is prohibited in this District. (Doc. 212.)

## ANALYSIS

**A.      The Health Insurance Portability and Accountability Act of 1996.**

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA" or "the Act") prohibits covered entities from engaging in the unauthorized disclosure or misuse of protected health information. *Harris v. Whittington*, No. 06–1179–WEB, 2007 WL 164031, at *2 (D.Kan. Jan.19, 2007). The Act does not, however, prohibit all disclosures but instead imposes procedures on health care providers as to the disclosure of medical information while still protecting the privacy of the patient. *Spraggins v. Sumner Reg. Medical Ctr.*, 2010 WL 4568715, at *2 (D. Kan. Nov. 3, 2010). HIPAA regulations provide for the disclosure of protected health information in judicial proceedings under the following circumstances:

> (1)   Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
>> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>>
>> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>>
>>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to

> ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e). This regulation essentially permits the provider to disclose information under two optional procedures without violating HIPPA: (1) by court order under section 164.512(e)(1)(i) authorizing such disclosure or, alternatively, (2) by a formal discovery request, such as a subpoena, accompanied by required notices and assurances.

In this case, Defendants seek to proceed under section 164.512(e)(1)(i), allowing for the release of protected health information upon court order. The overriding purpose of the Federal Rules of Civil Procedure is to provide for the "just, speedy and inexpensive" resolution of case. Fed.R.Civ.P. 1. A direct order may help achieve this goal by shortening the discovery process and providing clarity to providers.

The Court acknowledges that HIPAA and its regulations do not expressly authorize *ex parte* interviews of health care providers. That stated, there is a well-

established practice among judges of this District "of allowing informal *ex parte* interviews of plaintiff's treating physicians who are merely fact witnesses as long as defendant complies with HIPAA and its related regulations." ***Paliwoda v. Showman***, No. 12-2740-KGS, 2013 WL 3756591, at *2 (D. Kan. July 15, 2013) (citations omitted).

Such *ex parte* interviews are allowed by courts because "HIPAA presents certain considerations and constraints for covered entities cautious not to run afoul of the Act." ***Lowen v. Via Christie Hosps. Wichita, Inc.***, No. 10-1201-RDR, 2010 WL 4739431, at *2 (D. Kan. Nov. 16, 2010). "An order authorizing *ex parte* interviews of health care providers creates an avenue for informal discovery that might not otherwise be available." ***Paliwoda v. Showman***, No. 12-2740-KGS, 2013 WL 3756591, at *2. Opinions from this District

> reason that to allow *ex parte* communications with fact witnesses, such as treating physicians, creates a just result by allowing both parties equal, unfettered access to fact witnesses. To prohibit *ex parte* communications would allow one party unrestricted access to fact witnesses, while requiring the other party to use formal discovery that could be expensive, timely, and unnecessary. Witnesses, of course, may refuse to communicate *ex parte* and thus require the parties to resort to formal discovery procedures. Less expensive informal discovery, nevertheless, should be encouraged. For these reasons a court may allow defendants access to the medical records and treating physicians of a plaintiff who has placed his or her physical or mental condition in issue.

*Pratt v. Petelin*, No. 09-2252-CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010). Within this context, the Court will address Plaintiff's objections to the proposed Order.

**B.     Application of Missouri Law.**

Plaintiff argues that

> [m]any of Plaintiff's subsequent treating providers treated D.M. in Missouri, not Kansas. Specifically, D.M.'s subsequent Missouri treaters are from Children's Mercy Hospital in Kansas City, Missouri. Missouri prohibits *ex parte* communication by defense counsel with a plaintiff's subsequent treaters. **State ex rel. Proctor v. Messina**, 320 S.W.3d 145 (2010). Thus, this Court cannot authorize D.M.'s Children's Mercy providers in Missouri to engage in *ex parte* communications.

(Doc. 212, at 1.)

Defendants reply that the Missouri Supreme Court's stance is not applicable in this District Court of Kansas case as to health care providers practicing at Children's Mercy in Kansas City, Missouri. (Doc. 233, at 2.) Defendants indicate that Courts in this District have specifically rejected this analysis from the Missouri Supreme Court. (*Id*. (citing **Pratt**, 2010 446474, at *8) (holding that the *Messina* case "does not create controlling precedent for this Court" and declining "to adopt the holding that *ex parte* interviews are not considered 'in the course of' a judicial proceeding.").) Defendants also point out that

6

> Plaintiff has not cited any case in this district holding that *ex parte* contact is precluded if the treating physician works in Missouri. The legal issues surrounding *ex parte* communications with health care providers implicate the federal and local rules, the Kansas privilege statute, and HIPAA. None of those turns on where a witness works.

(Doc. 233, at 2.)

As discussed above, HIPAA permits a health care provider to disclose otherwise protected health information "in the course of any judicial or administrative proceeding" if that disclosure is in response to (i) an order of a court, or (ii) in response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court. 45 C.F.R. § 164.512(e)(1). Therefore, the express language of the Act allows such disclosure by the covered entity that occurs "in the course of" a "judicial proceeding." The Act does not, however, define the terms "in the course of" or "judicial proceeding."

The Assistant Secretary for Planning and Evaluation of the Department of Health and Human Services has provided the following guidance:

> In § 164.512(e) of the final rule, we permit covered entities to disclose protected health information in a judicial or administrative proceeding if the request for such protected health information is made through or pursuant to an order from a court or administrative tribunal or in response to a subpoena or discovery request from, or other lawful process by a party to the proceeding.

Standards for Privacy of Individually Identifiable Health Information, 65 Fed.Reg. 82462, 82529 (Dec. 28, 2000). As stated in *Messina*, the case cited by Plaintiff, "such disclosure must be under the supervisory authority of the court either through discovery or through other formal court procedures."

The law in this District interpreting the phrases "in the course of" and "judicial proceeding" clearly differs from Missouri law. Pursuant to Missouri law,

> the meeting at which *ex parte* communications occur is not a judicial proceeding because the trial court has no general oversight of the meeting or any control over it. Thus, 45 C.F.R. § 164.512(e), which permits disclosures in the course of judicial proceedings, does not apply to a meeting for *ex parte* communications, and consequently, a trial court has no authority to issue a purported HIPAA order advising the plaintiff's non-party treating physicians that they may or may not participate in informal discovery via *ex parte* communications.

*Messina*, 320 S.W.3d at 157. The law of this District, however, recognizes the "well-established practice" is that such communications are permitted – although not expressly authorized by – HIPAA. **Callahan v. Bledsoe**, 16-2310-JAR-GLR, 2017 WL 590254, at *1 (D. Kan. Feb. 14, 2017); *Lowen*, 2010 LW 4739431 (D. Kan. Nov. 16, 2010).

It is undisputed that, under the law of this District as well as the law in Missouri, once a plaintiff puts the matter of his or her physical condition in issue under the pleadings, "they waive the physician-patient privilege." **Giegerich v. National Beef Pkg. Co., LLC**, No. 13-2392-JAR, 2014 WL 103455, at *3 (D. Kan.

8

Jan. 9, 2014); *State ex rel. Jones v. Syler*, 936 S.W.2d 805, 807 (Mo. banc 1997). The Court acknowledges that, in an effort to lessen the likelihood of abuse of the physician-patient privilege, courts in Missouri have adopted the practice of not issuing orders that allow voluntary *ex parte* communications between defense counsel and treating health care providers. This is merely a procedural safeguard, however, not an aspect of the underlying substantive physician-patient privilege. As such, the Court sees no reason to abandon the well-established practice of issuing an order allowing *ex parte* communications with treating physicians in this District of Kansas case – even if those health care providers reside, practice, and/or provided health care to Plaintiff in Missouri. Plaintiff's objection is **overruled**.

**C.     Treating Physicians as Fact vs. Expert Witnesses.**

Plaintiff invokes the Federal Rules of Civil Procedure to advance a novel approach that would prohibit Defendants from engaging in *ex parte* communication with any treating health care providers at Children's Mercy Hospital in Kansas City, Missouri and Children's Hospital Colorado. Plaintiff argues that because some of these treating health care providers may be identified as retained experts or used as non-testifying consulting experts, Defendants should not be allowed to communicate, *ex parte*, with any of them. Plaintiff argues that

> [u]nder Fed.R.Civ.P. 26(b)(4), a party may only verbally communicate with an opposing parties' testifying expert by deposition. A retained expert's draft reports and disclosures are protected by work product. Fed.R.Civ.P.

9

> 26(b)(4). Communications between a party's attorney and their testifying experts are privileged work product unless the communications relate to compensation, identify facts or data the expert considered or the attorney provided, or identify assumptions. Fed.R.Civ.P. 26(b)(4)(C). For consulting experts employed for trial preparation, a party may not discover facts known or opinions held at all. Fed.R.Civ.P. 26(b)(4)(D). Pursuant to this Court's Scheduling Order, Plaintiff's deadline to disclose experts is June 28, 2019.

(Doc. 212, at 2.)

Plaintiff indicates that "[s]everal of D.M.'s subsequent treaters at Children's Mercy Hospital in Kansas City, Missouri and Children's Hospital Colorado" – who Plaintiff refuses to identify – are Plaintiff's "retained experts." (Doc. 212, at 2.) Plaintiff argues that the Court should not authorize *ex parte* communication with any of these health care providers because some of them will be ultimately designated as retained as experts. (*Id.*) According to Plaintiff, allowing Defendants "to engage in *ex parte* communications with those providers about their expert opinions, work product, drafts, or privileged correspondence with Plaintiff's counsel" would violate the Federal Rules of Civil Procedure, "which prohibit Defendants from discovering facts known and opinions held by Plaintiff's nontestifying experts, and make deposition the only means by which Defendants may verbally communicate with Plaintiff's testifying experts after disclosure pursuant to the Scheduling Order." (*Id.*)

Plaintiff contends that such communication "risks improper disclosure of work product and privileged information" because the retained expert doctors are not trained in identifying where the lines are drawn between privileged information, work product and disclosable facts." (*Id*., at 2-3.) According to Plaintiff, "[t]he risk of inadvertent and improper disclosure of confidential, work product, and privileged information is high and the prejudice to Plaintiff is permanent." (*Id*., at 3.)

Plaintiff also argues he should not be required to "prematurely disclose the names of these experts . . . prior to the Scheduling Order deadline for purposes of an order authorizing Defendants to engage in *ex parte* communications with Plaintiff's experts." (*Id*.) Plaintiff continues that this would give "Defendants an unwarranted increase in time to designate counter-experts because Defendants' expert deadline is not until November 13, 2019." (*Id*.)

Defendants characterize Plaintiff's position as follows:

> by simply putting some treaters on retainer, [Plaintiff attempts to] effectively cut off defendants' ability to have *ex parte* contact with any of the treating physicians at Children's Mercy Hospital in Kansas City and Children's Hospital Colorado. . . . Plaintiff then suggests that he may decide not to call those witnesses as experts at trial – and that if he chooses to treat them as 'consulting experts,' then defendants cannot even depose them about facts or opinions.

(Doc. 233, at 3.) Defendants correctly point out that Plaintiffs have cited no legal authority for this position. Defendants continue that "accepting plaintiff's argument would create an enormous loophole that nearly every medical malpractice plaintiff could unfairly exploit to obstruct defendants' access to witnesses and factual evidence." (*Id*.)

Defendants also argue that Plaintiff misinterprets Rule 26.

> To the extent treating physicians learn factual information through their care and treatment of a patient (and form opinions incidental to that care and treatment), they are not 'retained or specially employed to provide expert testimony in the case,' see Rule 26(A)(2)(b), so the work product protection under Rule 26(b)(4)(C) does not apply. As the Advisory Committee's note to the 1970 amendment to Rule 26 states, Rule 26(b)(4) 'does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.' *Id*. Generally, therefore, 'a physician who testifies on information and opinions developed and drawn during the treatment of the party as a patient is considered to be an ordinary fact witness rather than an expert.'

(*Id*., at 4 (citing ***Foster v. Lawrence Memorial Hosp.***, No. 91-1151-SAC, 1993 WL 156131, at *1 (D. Kan. April 5, 1993) (citations omitted).)

The Court agrees with Defendants that Plaintiff's approach is insupportable. A "central" point in American litigation is that "the law has a right to every person's evidence whether the person is an 'expert' or not." 8A Wright, Miller &

Marcus, Federal Practice & Procedure: Expert Witnesses 3d § 2033 (2018). Although Plaintiff's attempted tactic is clever, it clearly contravenes this tenant and the Federal Rules.

Plaintiff also requests that Plaintiff's counsel be permitted to attend defense counsel's interviews with treating physicians from Children's Mercy Hospital and Children's Hospital Colorado. Without citing any legal authority for such a requirement, Plaintiff argues that "[a]ttendance provides a safeguard against disclosure of privileged information, work product, and premature discovery of facts known and opinions held by Plaintiff's retained experts." (Doc. 212, at 3.) The Court **overrules** this request.

> As an analytical starting point, it is helpful to keep in mind that the Federal Rules of Civil Procedure are to be construed 'to secure the just, speedy, and inexpensive determination of every action. Informal discovery is both expedient and less expensive than formal discovery, and therefore should be encouraged, not discouraged. '[B]oth parties should have unfettered access to fact witnesses.' Fact witnesses, of course, may confer (or refuse to confer) with any party. … Although the court appreciates from strategic and tactical perspectives why skilled plaintiffs' lawyers would prefer to have exclusive informal access to treating physicians …, there is no persuasive legal support for that approach.

***Sample v. Zancanelli Mgmt. Corp.***, No. 07-2021-JPO, 2008 WL 508726, at *1 (D. Kan. Feb. 21, 2008); *see also* **Pratt**, 2010 WL 446474, at *7. The attendance of Plaintiff's counsel at these meetings would result in Defendants' access being

anything but "unfettered." Further, the process would become more expensive and less expedient, in contravention of the purpose of informal discovery. Although whether to participate in an *ex parte* interview remains the prerogative of the witness, who may also attach conditions to the voluntary interview, the attendance of Plaintiff's counsel is not required.

**D.     Potentially Ambiguous Language in Order.**

Plaintiff next argues that the proposed Order should not be entered as drafted because of the following language: "Unless specifically excluded by this Order, all medical records and protected health information in your possession regarding the person noted above shall be produced." (Doc. 193-1, at 2.) Plaintiff contends that such language has been "prohibited" by courts in this District. (Doc. 212, at 4 (citing **Warner v. Sherry Floyd, P.A.**, No. 16-4143-SAC, 2017 WL 2901188, at *2 (D. Kan. Apr. 19, 2017); **Williamson v. Joslin**, No. 15-CV-2657-JWL-TJJ, 2015 WL 5125421, at *3 (D. Kan. Sept. 1, 2015); **Paliwoda v. Showman**, No. 12-2740-KGS, 2013 WL 3756591, at *2 (D. Kan. July 15, 2013).) According to Plaintiff,

> [a]n order may authorize, but not command *ex parte* communications. By stating all health information shall be produced, the proposed Order attempts to compel D.M.'s subsequent treaters to communicate D.M.'s health information *ex parte*. At best, it creates ambiguity as to whether the Order simply authorizes *ex parte* communications, as stated in various parts of the Order, or requires them as stated on page 2. There is no legitimate reason for that ambiguity. The offending sentence should be struck from Defendants' proposed

14

> order or modified to clearly and unambiguously reflect
> that the order simply authorizes rather than mandates
> disclosure of protected health information.

(Doc. 212, at 4.)

Defendant responds that, taken in the proper context, this language is not ambiguous as does not command *ex parte* communication.

> The first part of the order deals with medical records and
> other information in the health care provider's care or
> custody, gives examples of documents subject to the
> order, and orders providers to make them 'available for
> examination and reproduction.' In the context of the
> order, then, the phrase 'all medical records and protected
> health information' following the bulleted list is not
> ambiguous. It means documentary and other information
> that can be 'examined and reproduced' – not interviews
> or conversations.
>       The order then transitions to its second topic,
> which is a separate paragraph discussing *ex parte*
> communication with counsel. The transition is signaled
> by the opening phrase: 'You are further notified that …'
> That paragraph of defendants' proposed order includes a
> clear statement that *ex parte* communication is permitted,
> 'provided the health care provider consent to the
> interview.'

(Doc. 233, at 6.) The Court agrees with Defendants that, taken in context, this language is not ambiguous and does not compel *ex parte* communication. Plaintiff's objection is **overruled**.

**E.    Disclosure of Health Care Providers to be Contacted.**

Plaintiff also argues that "this District requires an *ex parte* order to specifically identify Plaintiff's treating physicians to whom the order is

directed…." (Doc. 212, at 4 (citing *Brigham v. Colyer*, No. 09-2210-JWL-DJ, 2010 WL 2131967, at *5 (D. Kan. May 27, 2010).) Defendant correctly points out that *Brigham* is distinguishable because the defendants in that case agreed to specifically identifying such treating physicians. The Court *overrules* Plaintiff's request that the health care providers to whom the Order is directed be identified.

F.     **Termination of the Order**.

Plaintiff objects that the Order should indicate that it terminates at the close of discovery rather than at the conclusion of litigation. (Doc. 212, at 4.) Plaintiff offers no legal authority or argument for this position. Defendants indicate that D.M. "is a child with serious health issues, and his condition is susceptible to change at any time – including after the discovery deadline – thus necessitating access to D.M.'s medical records, health information, and speaking with consenting health care providers. (Doc. 233, at 8.) The Court agrees with Defendants. Plaintiff's objection is **overruled**. The Order shall terminate at the close of litigation.

IT IS THEREFORE ORDERED that the "Joint Motion for Order for Release of Protected Health Information and Allowing *Ex Parte* Interviews with Treating Physicians and Other Health Care Providers" filed by Defendants (Doc. 193) is **GRANTED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 20th day of December, 2018.

                                      S/ KENNETH G. GALE  
                                      KENNETH G. GALE  
                                      United States Magistrate Judge