## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

D.M., a minor, by and through   )
his next friend and natural guardian,   )
KELLI MORGAN,   )
  )
                Plaintiff,   )
  )
v.   )     Case No.: 18-2158-KHV-KGG
  )
WESLEY MEDICAL CENTER LLC )
d/b/a WESLEY MEDICAL   )
CENTER-WOODLAWN, *et al.*,   )
  )
            Defendants. )
_____)

## MEMORANDUM & ORDER ON MOTION FOR PROTECTIVE ORDER

Now before the Court is the Motion for Protective Order (Doc. 234) filed by

Defendant Wesley Medical Center, LLC regarding the 30(b)(6) deposition notice

served by Plaintiff (Doc. 234-1). Having reviewed the submissions of the parties,

Defendant's motion (Doc. 234) is **GRANTED in part** and **DENIED in part** for

the reasons set forth below.

## BACKGROUND

Plaintiff, through his natural guardian and next friend, filed her federal court

Complaint on April 9, 2018, alleging claims under Kansas medical malpractice

laws and under the Federal Emergency Medical Treatment and Active Labor Act.

The claims result from the medical care D.M. received on March 5 and 6, 2017.

Plaintiff alleges that on March 6, 2017, D.M. "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.)

The present motion results from the amended notice Plaintiff served as to the deposition of Defendant's corporate representative, pursuant to Fed.R.Civ.P. 30(b)(6). The parties conferred regarding the issues presented herein, which resulted in the amended notice.

## ANALYSIS

**I.      Legal Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and

proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No.

16-1188-JTM-KGG, 2018 WL 372440, at \*2 (D. Kan. Jan. 11, 2018).

    **B.**    **Rule 30(b)(6) Depositions.**

    A Rule 30(b)(6) deposition allows an opposing party to question a corporate

defendant by noticing the deposition of the corporation's representative as to

certain designated topics.  Pursuant to the rule,

> [a] party may in [its deposition] notice ... name as the
> deponent a public or private corporation ... and describe
> with reasonable particularity the matters on which
> examination is requested. In that event, the organization
> so named shall designate one or more officers, directors,
> or managing agents, or other persons who consent to
> testify on its behalf, and may set forth, for each person
> designated, the matters on which the person will testify.
> … The persons so designated shall testify as to matters
> known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6).  "In a Rule 30(b)(6) deposition, there is no distinction

between the corporate representative and the corporation." ***Sprint***

***Communications Co. L.P. v. Theglobe.com, Inc.***, 236 F.R.D. 524, 527 (D. Kan.

2006).

    As such, "to allow [Rule 30(b)(6)] to effectively function, the requesting

party must take care to designate, with painstaking specificity, the particular

subject areas that are intended to be questioned, and that are relevant to the issues

in dispute." *Id*., at 528.  Thereafter, the responding party is required to "make a

conscientious good-faith endeavor to designate the persons having knowledge of

the matters sought by [the deposing party] and to prepare those persons in order

that they can answer fully, completely, unevasively, the questions posed by [the

deposing party] as to the relevant subject matters." *Id*. (citing *Prokosch v.*

*Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D.Minn.2000) (quotations

omitted)).

## C.     Standards for Protective Orders.

Protective Orders are governed by Fed.R.Civ.P. 26(c), "which confers broad

discretion on the trial court to decide when a protective order is appropriate and

what degree of protection is required." *Layne Christensen Co. v. Purolite Co.*,

271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984)). *See also **Thomas v. IBM**, 48 F.3d 478, 482 (10th Cir. 1995);

*Terry v. Unified Gov't of Wyandotte Co.*, No. 09-2094-EFM-KGG, 2011 WL

795816 (D. Kan. March 1, 2011). The rule provides, in relevant part:

> A party or any person from whom discovery is sought
> may move for a protective order in the court where the
> action is pending....  The motion must include a
> certification that the movant has in good faith conferred
> or attempted to confer with other affected parties in an
> effort to resolve the dispute without court action.  The
> court may, for good cause, issue an order to protect a
> party or person from annoyance, embarrassment,
> oppression, or undue burden or expense, including one or
> more of the following:
>
> * * *

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> * * *
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ....

Fed.R.Civ.P. 26(c)(1). In this context, the Court will analyze Plaintiffs' 30(b)(6) deposition notice and Defendant's objections thereto.

## II.    Deposition Notice at Issue.

### A.    Topics 1-8, 14, 15, 18, 19, and 21.

Defendant first objects to Topics 1-8, 14, 15, 18, 19, and 21, which ask Defendant to "identify and describe" various of its policies and procedures. (Doc. 234, at 3; Doc. 234-1, at 2-4.) Defendant contends that

> [t]here is no issue with the particularity of the described policies and procedures; the problem with these topics is that the 'matters for examination' are not set forth with reasonable particularity. All of the policies and procedures described in these topics have been produced and, as far as Wesley's counsel knows, Plaintiff has not disputed this.

(Doc. 234, at 3.) Defendant continues that it would "be a waste of time" for the deponent is to "identify and describe" these policies as the deponent "would simply be reading the documents already produced." (*Id*.)

Defendant has asked Plaintiff to further specify any information needed regarding the policies, "such as the policy's author, origination date, review committee, source," etc., but Plaintiff has apparently declined to do so.  (*Id*., at 4.)  Defendant contends that it thus "does not understand what plaintiff wants to know about the policies, and consequently would have a difficult time preparing its deponent."  (*Id*.)  As such, Defendant asks the Court to quash these topics or, in the alternative, modify them "to state with reasonable particularity the matters Plaintiff wishes to elicit testimony regarding these policies and procedures."  (*Id*.)

Plaintiff responds by citing a prior decision from the undersigned Magistrate Judge, which called this approach "improper."  In ***White v. Union Pac. R. Co.***, Defendant objected to Plaintiff's 30(b)(6) deposition notice, stating that it would "provide documents" in response to several of the listed topics, "refers [plaintiff] to documents previously produced, or contends that no such documents exist – arguing that requiring a deposition on these topics would be wasteful."  No. 09-1407-EFM-KGG, 2011 WL 721550, at *1 (D. Kan. Feb. 22, 2011).  Therein, the undersigned Magistrate Judge stated that "Defendant seems to be arguing that Plaintiff's available discovery methods should be limited to document requests rather than depositions. This is improper."  *Id*.  This Court quoted ***McCloud v. Board of Geary County Comm'rs*** for the proposition that

> [p]arties may choose the manner and method in which
> they conduct discovery.  The Federal Rules provide

> several vehicles for discovery. Parties may choose their
> preferred methodology.  Courts generally will not
> interfere in such choices.

No. 06–1002–MLB, 2008 WL 3502436, at *2 (D.Kan. Aug. 11, 2008) (citing

*Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. 9402395–

GTV, 1995 WL 625962, at *5 (D.Kan. Oct. 5, 1995)).  Plaintiff contends that she

"is entitled to an explanation from Wesley as to how its official policies work, how

they were implemented to the purported treatment of D.M., how they applied to the

purported treatment of D.M., and an identification and description of which

policies were and were not applicable to D.M.'s purported treatment."  (Doc. 253,

at 4.)

Defendant replies that it is not arguing that the prior document production

was sufficient and that a 30(b)(6) deposition should be quashed as duplicative.

(Doc. 265, at 3.)  Rather, Defendant wants clarification as to "[w]hat is meant by a

command to 'describe' a policy?"  (*Id*.)  According to Defendant, "a Rule 30(b)(6)

deposition topic that only states, 'Identify and describe' a policy is not 'reasonably

particular' in that it is difficult if not impossible to prepare a corporate

representative deponent to address the potentially voluminous areas of inquiry that

could fall under such a topic."  (*Id*.)

Defendant continues that Plaintiff's response brief proves Defendant's point

that the topics need clarification by indicating that "while Wesley may view its

policies as 'straightforward needing no explanation of ***how they were or were not***

***applied to D.M.'s purported treatment***, Plaintiff does not. Plaintiff is entitled to

discover that information from Wesley's deposition testimony.'" (*Id.*, at 4 (citing

Doc. 253 at 3) (emphasis supplied by Defendant)). Defendant also points out that

Plaintiff argues she is

> 'entitled to an explanation from Wesley as to how its
> official policies work, how they were implemented to the
> purported treatment of D.M., how they applied to the
> purported treatment of D.M., and an identification and
> description of which policies were and were not
> applicable to D.M.'s purported treatment. ***That is what***
> ***Plaintiff seeks in these topics and it is exactly what the***
> ***topics request***.' (Doc. 253 at 4).

(Doc. 265, at 4 (emphasis supplied by Defendant.)

The Court acknowledges Defendant's concern that the topics listed are not

sufficiently specific. Further, the clarifications of these topics provided by

Plaintiff, in the Court's purview, do not necessarily and obviously fall under the

linguistic umbrella of "identify and describe." That stated, the thrust of

Defendant's argument is that the deposition notice, as written, did not provide

sufficient specificity as to what was meant by "identify and describe" these topics.

As pointed out by Defendant, Plaintiff has now provided clarification that she is

seeking a deponent who can provide "an explanation from [Defendant] as to how

its official policies work, how they were implemented to the purported treatment of

D.M., how they applied to the purported treatment of D.M., and an identification

8

and description of which policies were and were not applicable to D.M.'s purported treatment." (Doc. 265, at 4 (citing Doc. 253 at 4).) Further, as Defendant points out, Plaintiff has responded that she seeks testimony explaining "how [Defendant's categories of policies] were or were not applied to D.M.'s purported treatment." (*Id*.)

According to Plaintiff, "[t]hat is what Plaintiff seeks in these topics and it is exactly what the topics request." (Doc. 253, at 4.) The Court does not agree that the categories listed in the 30(b)(6) notice, as written by Plaintiff's counsel, "exactly" and specifically requested such testimony. That stated, the Court finds that Plaintiff has, with the above language quoted from her responsive brief, now clarified what she is seeking with sufficient specificity. Given these clarifications, Defendant can no longer contend that it "does not understand what plaintiff wants to know about the policies, and consequently would have a difficult time preparing its deponent." (Doc. 234, at 4.)

While the Court will not quash these deposition topics, Defendant's motion asks, in the alternative, for the Court to "modify" the topics "to state with reasonable particularity the matters Plaintiff wishes to elicit testimony regarding these policies and procedures." (*Id*.) The Court thus **orders** the clarifications stated by Plaintiff in her response brief (quoted *supra*) to serve as a limitation as to the extent, meaning, and scope of the deposition testimony sought from the Rule

30(b)(6) deponent. Defendant's motion is, therefore, **GRANTED in part** as to Topics 1-8, 14, 15, 18, 19, and 21.

The Court **OVERRULES** Defendant's objection that the testimony sought "would be requesting improper expert opinions without proper basis or foundation." (Doc. 265, at 4.) The Court finds that Plaintiff is entitled to depose a representative of Defendant on these issues and **ORDERS** Defendant to identify a deponent who is knowledgeable as to these areas of inquiry and is entitled to speak on behalf of Defendant. The Court acknowledges that Defendant "reserves and requests the right to object, file a motion for protective order and fully brief the matter prior to the corporate representative deposition occurring." (Doc. 265, at 4-5.) The Court advises that such additional briefing on this issue will not be necessary or helpful and is not encouraged.

**B. Relevance of Topics (Nos. 9, 10, 12, 19-21).**

Defendant next contends that the deposition notice includes topics that "do not seek evidence relevant to a claim or defense in this case." (Doc. 234, at 5.) Defendant argues that these topics, which will be addressed individually herein, "generally seem geared toward obtaining information regarding marketing, profitability, or social media posts, which presumably can be used in a jury trial to attempt to portray defendants in a negative light." (*Id.*)

**1. Topic 9.**

This topic asks Defendant to "[i]dentify and describe the factual basis for Wesley's representations that it has specialists in emergency medicine, neurological and stroke care as alleged in paragraphs 164-165 of the First Amended Complaint." (Doc. 234-1, at 3.) Defendant argues that Plaintiff has asserted "no claim for fraud or misrepresentation, and there is no evidence D.M.'s parent's even saw the alleged representations," thus making this website content irrelevant. (Doc. 234, at 5.)

Plaintiff responds that the information is relevant to the claims and defenses in this case because

> specialists are burdened with a more stringent standard of care than generalists. '[T]he particular decisions and acts required to satisfy that duty of care vary, *i.e.*, the required skill depends on the patient's situation and the physician's medical specialty, if applicable.' *Foster ex rel. Foster v. Klaumann*, 296 Kan. 295, 302, 294 P.3d 223, 229 (2013).

(Doc. 253, at 5.) Plaintiff continues that "the allegations in paragraphs 164-165 of Plaintiff's First Amended Complaint consist of quotes from Wesley relating directly to the applicable standard of care owed to D.M." (*Id.*) Plaintiff argues that she is "entitled to [Defendant's] explanation of these statements taken directly from [its] website." (*Id.*, at 7.)

Defendant replies that "under Kansas law, the standard of care can only be proven through expert testimony – not representations on hospital websites." (Doc. 265, at 7 (citation omitted).) The Court agrees that "[i]ssues relating to

standard of care [are to] be addressed by the appropriately trained and educated

medical experts and professionals." ***Funk v. Pinnacle Health Fac. XXXII, LP***,

No. 17-1099-JTM-KGG, 2019 WL 280950, at * (D. Kan. Jan. 22, 2019).  Further,

the Court still finds that providing a corporate deponent as to standards of care is

unnecessarily cumulative and duplicative given the expert reports, expert

depositions, and opportunity to depose health care professionals in this case.  *Id.*

Even so, the Court finds that Plaintiff is entitled to depose a corporate

representative who can "describe the *factual basis* for Wesley's representations

that it has specialists in emergency medicine, neurological and stroke care as

alleged in paragraphs 164-165 of the First Amended Complaint."  (Doc. 234-1, at 3

(emphasis added).)  Given the broad scope of discovery, such factual testimony –

as opposed to standard of care testimony – is relevant and proportional to the needs

of the case.  Defendant's objection to Topic 9 is **partially OVERRULED** and the

Court **GRANTS in part** and **DENIES in part** this portion of Defendant's motion.

### 2.    Topic 10.

Plaintiff next seeks a witness to "[i]dentify and describe the analysis

performed in deciding to create" a particular television advertisement for

Defendant, which "tells the story of an adult patient's visit to the Wesley

Woodlawn emergency room where the patient was diagnosed with a stroke."

(Doc. 234-1, at 3; Doc. 235, at 5.)  Defendant contends the advertisement "was

posted in October 2017, well after D.M.'s visit and there is no evidence D.M.'s parents saw this ad or relied on it in choosing Wesley Woodlawn for D.M.'s care." (Doc. 235, at 5.) Defendant continues that "[t]here is no apparent connection between 'the decision to create' this advertisement and Plaintiff's claims in this lawsuit." (*Id.*)

Plaintiff does not address the timing of when the advertisement was created or whether it was relied upon by Plaintiff's parents in choosing Defendant. Rather, Plaintiff responds that "[t]his information has a possible relation to the standard of care and to Wesley's defense as to why it failed to immediately test D.M. for impending stroke in light of his emergency room presentation." (Doc. 253, at 7-8.) As discussed above, standard of care issues are to be left to expert witnesses. Further, the Court fails to see the relevance of a commercial that was produced after the events at issue and was not relied upon by Plaintiff's parents. Defendant's objections are **SUSTAINED** and this portion of Defendant's motion is **GRANTED**.

### 3.  Topic 12.

This topic asks Defendant to "[i]dentify and describe [its] contractual relationship with [co-Defendant] CEP, including compensation, productivity compensation and incentives." (Doc. 234-1, at 3.) Defendant argues that "[t]here does not appear to be a nexus between the 'compensation, productivity

compensation and incentives,' and any claims or defenses asserted in this case.

(Doc. 234, at 6.)  Defendant continues that the topic "has nothing to do with

whether Wesley's emergency room nurse met the applicable standard of care while

treating D.M. or whether treatment falling below the standard of care caused injury

to D.M."  (*Id.*)

Plaintiff responds that Defendant "produced these contracts in discovery

because they are relevant to Plaintiff's claims."  (Doc. 253, at 8.)   According to

Plaintiff, this information is "relevant to determine"

> 1) whether Wesley or CarePoint trained these Defendants
> provided to Wesley by CarePoint; 2) whether these
> Defendants must follow Wesley's or CarePoint's policies
> and procedures; 3) whether these staff members are
> trained in Wesley's or CarePoint's policies and
> procedures or both; and 4) to determine Wesley's
> potential bias in selecting substandard staff members as a
> result of favorable incentives or compensation
> arrangements between CarePoint and Wesley.  This
> information bears a possible relation to Plaintiff's
> inadequate policies, failure to adhere to policies, and
> inadequate staffing claims against Wesley.

(*Id.*)

Defendant replies that this "is not sufficient to establish relevance."  (Doc.

265, at 9.)  The Court finds that the topic is not facially objectionable.  As such,

Defendant, as the party resisting discovery, has the burden to support its

objections.  *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, n.

36 (D. Kan. 2004) (citing *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666,

670 (D. Kan. 2003)); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136

F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request

based on relevancy grounds bears the burden of explaining how "each discovery

request is irrelevant, not reasonably calculated to the discovery of admissible

evidence, or burdensome").  The party opposing a discovery request cannot make

conclusory allegations that a request is irrelevant, immaterial, unduly burdensome,

or overly broad.  Rather, the party resisting discovery must show specifically how

each discovery request is irrelevant, immaterial, unduly burdensome or overly

broad.  *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D. Kan. 1995) (citation

omitted).  Merely stating that a category of requested information or testimony is

irrelevant does not suffice unless the verbiage is facially objectionable.  *Funk v.

Pinnacle Health Fac. XXXII, LP*, No. 17-1099-JTM-KGG, 2018 WL 6042762, at

*2 (D. Kan. November 19, 2018).

As to the information sought by Category No. 12, while Defendant has

*asserted* that the information is irrelevant to Plaintiff's claims or its defenses in this

case, it has failed to establish *how* this information is irrelevant.  The underlying

contracts have been produced in discovery.  Plaintiff is entitled to question a

representative of Defendant about the stated topics related to those contracts.  This

portion of Defendant's motion is **DENIED**.

      4.      **Topic 19.**

This topic asks Defendant to provide a deponent to who can "[i]dentify and describe Wesley's social media policies and procedures that would apply to the health care providers who provided treatment to D.M. on March 5, 2017[,] at the Wesley Woodlawn emergency department." (Doc. 234-1, at 4.) Defendant contends that "[e]ven if it were relevant, Defendant Grover is the only health care provider that saw D.M. at Wesley whose social media postings are even mentioned" in Plaintiff's Amended Complaint, thus "at the very least, this topic should be narrowed to only such policies and procedures as would be applicable to Defendant Grover's social media posts." (*Id.*) The Court acknowledges that the parties have agreed to narrow Topic 19 accordingly. (*See* Doc. 265, at 9.)

### 5. Topic 20.

Topic 20 seeks a deponent as to the reasons why Defendant "decided to contract with [co-Defendant] CarePoint in January, [sic] 2017 for CarePoint to provide staffing at the Wesley Woodlawn emergency room." (Doc. 234-1, at 4.) In opposing this category of information, Defendant merely contends that "Plaintiff has not articulated to Wesley's counsel how 'the reasons why' [it] contracted with CarePoint to provide staffing in its Woodlawn emergency room is relevant to a claim or defense in this malpractice action." (Doc. 234, at 6.)

Plaintiff responds that it is an "established fact" that D.M. was "seen by Defendant Grover, a physician's assistant employed by a third party, CarePoint,

and her treatment was approved by another CarePoint employee, Dr. Faimon."

(Doc. 253, at 9.) Plaintiff thus argues that Defendant's decision to "outsource" its

emergency room care is relevant to Plaintiff's claim because Defendant's

emergency department's former medical director stated, in an August 8, 2014,

article appearing in the Wichita Eagle newspaper, "that providing emergency

services 'is not something you can fly in from out of town and buy… It's created

from years of teamwork…When you take that away, you potentially put patient

care at risk." (*Id.*)

Plaintiff continues that she is seeking a witness "knowledgeable on the

analysis performed by [Defendant] concerning this risk to its emergency

department patients who receive treatment from such third-party contractors before

it outsourced its emergency room obligations." (*Id.*) Plaintiff contends this

information is relevant to her claims that Defendant provided substandard care to

D.M. (*Id.*)

Defendant replies that

> [i]f the negligence of another health care provider (such
> as an APRN, physician assistant, or physician), see
> K.S.A. 40-3401(f) (listing types of "health care
> providers") is an element of a proposed negligence claim
> against Wesley, it is foreclosed as a matter of law. *See*
> K.S.A. 40-3403(h) (a health care provider, such as
> Wesley, 'shall have no … responsibility for any injury or
> death arising out of the rendering of or the failure to
> render professional services inside or outside this state by
> any other health care provider …'); ***Cady v. Schroll***, 298

Kan. 731, 745 (2014) ('K.S.A. 40–3403(h) absolves a health care provider not just from vicarious liability but from any responsibility, including independent liability, where the injured party's damages are derivative of and dependent upon the rendering of or the failure to render professional services by another health care provider.').

(Doc. 265, at 9-10.)  Given this authority, Defendant argues that "Plaintiff's ideas about a negligence claim against Wesley for contracting with CarePoint are untenable."  (*Id*., at 10.)

While the Court acknowledges the holdings of the legal authority cited by Defendant, it is not persuaded by Defendant's argument.  CarePoint is a co-Defendant in this case.  Even assuming Plaintiff cannot pursue the type of negligence claim discussed in these cases, the Court finds that Defendant's analysis, if any, "concerning this risk to its emergency department patients who receive treatment from such third-party contractors" meets the threshold of relevance and proportionality to the claims and/or defenses in this case. Defendant's motion is **DENIED** as to Topic 20.

### 6. Topic 21.

This topic seeks a corporate representative to testify as to Defendant's "patient complaint policies and procedures including the procedure for handling complaints that come through [Defendant's] patient advocate line, how they are tracked and resolved and the individuals involved in the process."  (Doc. 234-1, at 4.)  Defendant contends that this topic "is overbroad, has nothing to do with the

18

care provided to D.M. and whether it met the standard of care, and is not relevant to a claim or defense" because Plaintiff has made no allegation "relating to how [Defendant] processes complaints in general and makes no allegation that such a process caused or contributed to plaintiff's damages."  (Doc. 234, at 6.)

Plaintiff responds that this topic is "specifically" related to the complaint made by Kevin Morgan in March 2017 regarding the care given to D.M.  (Doc. 253.)  Plaintiff continues by asking

> [w]hat was the procedure in place for Wesley to identify, investigate and resolve Mr. Morgan's complaint?  Why did the complaint result in the involvement of the Wesley Woodlawn CEO?  Are there varying levels of complaint responses based on whether Wesley believes it acted negligently or based on certain levels of damages to a patient?  Such information is relevant because it would constitute admissions that Wesley provided substandard care.  Plaintiff is entitled to discover that information.

(Doc. 253, at 9-10.)

Defendant replies that the connection of this information to Plaintiff's claims is "tenuous" because "even plaintiff's speculation wrongly assumes that the non-medical staff directing Mr. Morgan's complaint had the expertise to have any idea as to whether 'Wesley provided substandard care, and further assumes that any such implied 'admission' would be relevant or binding."  (Doc. 265, at 10.)  The Court does not agree but rather finds that Defendant's response to the complaint lodged by Kevin Morgan – and the procedure in place for handling, tracking, and

resolving this complaint – is relevant and discoverable.  Defendant's objections are

**OVERRULED** and the Court **DENIES** this portion of Defendant's motion.[1]


       **IT IS THEREFORE ORDERED** that Defendant's Motion for Protective

Order (Doc. 234) is **GRANTED in part** and **DENIED in part** as set forth more

fully herein.

       IT IS SO ORDERED.

       Dated this 14th day of February, 2019, at Wichita, Kansas.

           s/ KENNETH G. GALE
           HON. KENNETH G. GALE
           U.S. MAGISTRATE JUDGE

---

[1] The Court acknowledges that Topics 22, and 24-26 are moot.  (*See* Doc. 253, at 10, Doc. 265, at 10.)