IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D.M., a minor, by and through )
his next friend and natural guardian, )
KELLI MORGAN, )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　 )
v. ) Case No.: 18-2158-KHV-KGG
　　　　　　　　　　　　　　　　　 )
WESLEY MEDICAL CENTER LLC )
d/b/a WESLEY MEDICAL )
CENTER-WOODLAWN, *et al.*, )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　Defendants. )
_____)

**MEMORANDUM & ORDER ON MOTION TO COMPEL**

Now before the Court are the Motions to Reconsider filed by Defendant Wesley Medical Center, LLC (hereinafter "Wesley") (Doc. 272) and Defendant Via Christi Hospitals, Inc. (hereinafter "Via Christi") (Doc 274). The motions both result from the Court's prior Order (Doc. 267) on a motion to compel (Doc. 214) filed by Plaintiff regarding peer review and/or risk management documents identified in these Defendants' privilege logs. Having reviewed the submissions of the parties, the Court **GRANTS** the Defendants' request to reconsider the prior Order (Doc. 267) but **DENIES** Defendants' request to recognize a federal court peer review and/or risk management privilege.

**BACKGROUND**

1

Plaintiff, through his natural guardian and next friend, filed his federal court Complaint on April 9, 2018, alleging claims under Kansas medical malpractice laws and under the Federal Emergency Medical Treatment and Active Labor Act. The claims result from the medical care he received on March 5 and 6, 2017. Plaintiff alleges that on March 6, 2017, he "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.)

In response to Plaintiff's Requests for Production Nos. 5, 6, 14, 24, 28, 29, 31, 32 and 54, Via Christi identified responsive documents but asserted peer review and risk management privileges. Via Christi identified VCHW-R000001-12, 13-15, 21-28, 38-40, and 54-56 as responsive but provided a privilege log asserting these privileges. (Doc. 214-1, at 28-31.) Wesley did the same in response to Plaintiff's Requests for Production of Documents Nos. 14, 25, 27, and 31. (*Id.*, at 33-35.) Via Christi's privilege log indicates that certain of the withheld documents contain "details of event, injury details, when and where event occurred, and who was notified" about the event. (*Id.*, at 28-31.)

Plaintiff contends "[t]hese are essential facts going to the heart of Plaintiff's claim" and, as such, the facts are discoverable. (Doc. 214, at 1.) Plaintiff brought the underlying motion seeking an Order compelling Defendant to produce

materials to the Court so that it could conduct an *in camera* inspection "to redact non-facts" in these documents, which would then be produced to Plaintiff. (Doc. 214, at 1.)

In ruling on that motion, the underlying Magistrate Judge found the parties' analysis of the peer review and risk management privileges to be misplaced because Plaintiff brought claims under federal as well as state law. The Court indicated that the appropriate analysis was contained in its prior opinion in ***Sellers v. Wesley Medical Center, LLC***, No. 11-1340-JAR-KGG, 2012 WL 5362977 (D. Kan. Oct. 31, 2012), which also involved a plaintiff bringing claims based on the federal EMTALA statute as well as pendent state law medical malpractice claims.

This Court held that in the present case, as in ***Sellers***, "[t]he issue thus before the Court is whether and/or how the Kansas state court statutory peer review privilege applies to Plaintiff's federal and pendant state law claims in federal court." (Doc. 267, at 6 (citing ***Sellers***, 2012 WL 5362977, at *3).) Because neither party had addressed the issue, as was the case in ***Sellers***, the Court attempted to decide "whether certain evidence at issue relates to Plaintiff's EMTALA claim or the state court medical malpractice claim, or both." *Id.* (citing ***Sellers***, at *3).) The undersigned Magistrate Judge relied on the following passage from the ***Sellers*** opinion:

> In so doing, the Court holds that evidence relating only to
> Plaintiff's federal claim will not be subject to assertions

3

> of the Kansas statutory peer review privilege, to the extent Plaintiff has adequately opposed the application of the privilege, as no such privilege has been recognized by the Tenth Circuit or U.S. Supreme Court. ***Sonnino** [v. University of Kansas Hosp. Auth*., 220 F.R.D. 633, 644 (D. Kan. 2004).] On the other hand, evidence relating only to Plaintiff's pendant state law cause of action will be subject to the privilege to the extent it was adequately asserted by Defendant. Finally, to the extent evidence relates to both the federal and state law causes of action, the privilege will not apply to the extent it was adequately opposed by Plaintiff.

(*Id*., at 7 (quoting ***Sellers***, 2012 WL 5362977, at *3).)

The Court noted that "[n]o attempt was made by either Defendant to indicate whether certain evidence related only to Plaintiff's state law claim (to which the privileges would be applicable) or related only to Plaintiff's federal claim pursuant to EMTALA (to which the privileges would not be applicable)." *Id*., at 7. The Court held that the responsive information identified in Defendants' privilege logs relates to both the federal and state law causes of action and, given Plaintiff's sufficient opposition to the privileges, the Kansas statutory privileges do not apply. (*Id.* (citing ***Sellers***, 2012 WL 5362977, at *3).) The Court thus overruled Defendants' peer review and risk management privilege objections and granted Plaintiff's motion (Doc. 214). (Doc. 267, at 7-8.) The Court declined the request to engage in an *in camera* review of the documents at issue, but rather ordered unredacted copies of the documents be produced within thirty (30) days of the date of the prior Order. (*Id*., at 8.)

4

Wesley points out that the Court *sua sponte* raised the issue of the applicability of the state law privileges to Plaintiff's federal EMTALA claim. (Doc. 272, at 1-2.) Wesley now "requests the opportunity to brief and argue points not raised in Plaintiff's Motion to Compel." (*Id.*, at 2.) Wesley relies on the U.S. Supreme Court decision of ***Day v. McDonough***, which, according to Wesley, holds that "before acting on its own initiative a court should accord the parties fair notice and an opportunity to present their positions." (Doc. 272, at 2, citing ***Day***, 547 U.S. 198, 210 (2006).) Wesley argues that "(1) the court should adopt a peer review privilege applying federal common law, and (2) even if no federal common law peer review privilege is adopted, certain documents for which the Kansas peer review and risk management privileges were asserted are not relevant to Plaintiff's EMTALA claim." (*Id.*)

Via Christi points out that, in the prior Order, the Court made the "factual finding that all of the disputed documents were relevant to both the EMTALA claim and the malpractice claims, because the defendant hospitals, having only responded to the argument that plaintiff raised, had not attempted to identify any particular documents as relating only to the state-law claims." (Doc. 274, at 2 (citing Doc. 267 at p. 7).) Via Christi raises the following issues: "1. Should the Court reconsider its sua sponte ruling that there is no privilege under federal law for hospital peer review and risk management documents? 2. Should the Court

reconsider its factual finding as to one of the documents requested, which is not related to the EMTALA claim?" (*Id*.)

## ANALYSIS

I.     **Reconsideration.**

Pursuant to D. Kan. Rule 7.3(b), reconsideration of a non-dispositive order is available where there is "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." The Court finds that, because the parties were not instructed to present argument on the issue applicability of the privilege, reconsideration is appropriate, particularly given the importance of the issues relating to the peer review and risk management privileges. Contrary to Plaintiff's arguments (Doc. 279, at 3-4), to deny the parties the opportunity to address the issues raised by the Court would constitute manifest injustice pursuant to Rule 7.3. The Court thus **GRANTS** Defendants' motions to the extent they request reconsideration. The Court will now, however, address the underlying legal issue that has now been briefed by the parties – whether to adopt the peer review privilege in the federal District Court of Kansas.

II.    **Application of Privilege.**

As an initial matter, the Court notes that Defendants acknowledge "that no federal peer review privilege has been recognized by the Supreme Court or the

6

Tenth Circuit."[1] (Doc. 272, at 3 (citing Doc. 267, at 7; *Sellers*, 2012 WL 5362977, at *2, *3; ***Sonnino v. University of Kansas Hosp. Auth.***, 220 F.R.D. 633, 644 (D. Kan. 2004).) Wesley argues, however, that the Court should "find that a federal peer review privilege is applicable under the facts of this case." (*Id.*) Wesley cites numerous cases from other jurisdictions in which courts applied a federal common law peer review privilege in EMTALA and FTCA cases that, like the present case, also had pendant state law claims. (*Id.*, at 4.) Plaintiff points out that Defendants "ignor[e] binding precedent from this jurisdiction and cit[e] to only out-of-jurisdiction, non-binding authority …" (Doc. 279, at 5.)

Wesley continues that recognition of the privilege by this Court would "serve public and private interests," such as the provision of an acceptable quality health care, which Wesley states is "essential to the well-being of [the] citizens [of Kansas] …" (Doc. 272, at 5.) Another consideration raised by Wesley is the facilitation of information and opinions between health care professionals with the goal of improvement of patient care.

The Court acknowledges that federal and state courts in Kansas have recognized the strong public policy behind the privileges. *See* ***Fretz v. Keltner***, 109 F.R.D. 303, 309 (D. Kan. 1985); ***Adams v. St. Francis Regional Med. Center***,

---

[1] The Court will cite to and discuss Wesley's motion because Via Christi "adopts and incorporates by reference the arguments presented by Wesley … on this issue." (Doc. 274, at 3.)

264 Kan. 144, 955 P.2d 1169 (1998). The Court also acknowledges that some form of the privileges has been adopted by all 50 states and the District of Columbia. *Francis v. U.S.A.*, No. 09-4004-GBD-KNF, 2011 WL 2224509, at *6 (S.D. N.Y. May 31, 2011) (citation omitted).

That stated, the fact remains that the peer review and risk management privileges have not been recognized in this District or the Tenth Circuit. In the absence of Congressional directive, this Court should be cautious imposing restrictions on the discovery of evidence relevant to federal claims. Defendants have not persuaded the Court to recognize an entirely new federal court privilege under the circumstances presented.

## III. Relevancy of Documents to Plaintiff's EMTALA Claim.

Wesley argues that "[s]ome of the documents set forth in [the] privilege log … are not relevant to plaintiff's 'adequate screening' EMTALA claim as it pertains to the screening of D.M. …" (Doc. 272, at 10.) Wesley continues that if so, these documents would be relevant only to Plaintiff's pendant state law claim, thus making them subject to the protections of the state law privilege. Interestingly, Via Christi "acknowledges that most of the documents requested would, to the extent they are relevant at all, pertain to all of plaintiffs' claims," but asks the Court to reconsider its ruling as to four pages of a certain document.

(Doc. 274, at 4.) The Court will individually address the various documents identified by Wesley and Via Christi.

### A. Regulatory Survey Data Log.

Wesley argues that this "online form completed to reflect the fact of site visit by a regulatory agency and the area of the hospital being reviewed" contains no facts regarding Plaintiff's treatment. (Doc. 272, at 10.) Plaintiff argues that "[t]he fact of an EMTALA regulatory site visit and the area of hospital being reviewed relates to the EMTALA claim." (Doc. 279, at 8.) Plaintiff continues that "[t]he findings and conclusions of an EMTALA regulatory emergency department site visit relate to EMTALA claims." (*Id.* (citing ***In re Syngenta AG MIR 162 Corn Litig.***, No. 14-MD-2591-JWL, 2017 WL 1106257, at *18 (D. Kan. March 24, 2017).) The Court agrees with Plaintiff that these documents relate to the EMTALA claim. As such, the state law privileges do not apply. The documents are to be produced.

### B. EMTALA Requested Documents & Reports Form.

Wesley contends that "[t]his document lists documents that were requested by the regulatory agency for purposes of a generalized EMTALA compliance survey conducted at Wesley" and contains nothing relevant to Plaintiff's care or treatment. (Doc. 272, at 10.) Plaintiff responds that EMTALA compliance is "directly related" to Plaintiff's EMTALA claim because "[f]ailing to comply with

9

EMTALA regulations could have a bearing on Plaintiff's EMTALA claim and could lead to other evidence bearing on Plaintiff's EMTALA claim." (Doc. 279, at 9.) The Court agrees that these documents relate to Plaintiff's EMTALA claim and, as such, the state law privilege does not apply. The documents are to be produced.

### C. Handwritten Notes from Regulatory Site Visit.

Wesley contends that "only pages 4,5, and 7 relate to the EMTALA claims or even the facts of care provided to Plaintiff." (Doc. 272, at 10.) Wesley argues that the remaining pages are not applicable to Plaintiff's EMTALA claim because they merely "contain summaries of interviews of Wesley officers (not involved in care) after reviewing the Plaintiff's chart, and notes regarding document collection for the regulators." (*Id*.) The Court agrees with Plaintiff that these documents are relevant to the EMTALA claim "because that information may reveal EMTALA violations or lead to information that has a bearing on EMTALA violations." (Doc. 279, at 10.) The documents are to be produced.

### D. Forms for Disclosures of Medical Records of multiple patients provided during regulatory survey.

Wesley argues that "[t]hese documents have no relevance to the EMTALA claim or the care provided to Plaintiff," but rather consist of "medical record disclosure forms containing the names of other patients that show what other

pediatric patient medical records, besides those of D.M., were provided to surveyors by their request." (Doc. 272, at 12.)

Plaintiff contends that the documents are relevant to the EMTALA claims "to the extent they show pediatric patients with similar emergency department presentations as D.M. who were screened and stabilized before transfer to another floor." (Doc. 279, at 10.) According to Plaintiff, the documents "would tend to serve as admissions that D.M. should have been screened and discharged differently given his presentation." (*Id*.) The Court agrees that these documents relate to Plaintiff's EMTALA claim and, as such, the state law privilege does not apply. The documents are to be produced. The Court does, however, **GRANT** Wesley's request "to redact all patient identifiers prior to production so as to protect patient privacy under HIPAA regulations." (Doc. 272, at 12.)

### E. Letter from Outside Organization (Object that further specificity will waive the privilege) requesting response to D.M. news article.

Wesley contends that "[t]his letter does not relate to the EMTALA claim or the facts of the underlying care," because it is simply "a letter from the Joint Commission (a hospital accreditation organization) citing a newspaper article about the Plaintiff and requesting that the hospital provide a written explanation." (Doc. 272, at 12.) Plaintiff responds that "[t]he newspaper article describes the substandard care D.M. received at Wesley emergency department" and is thus "related to the EMTALA claims and so is a request to Wesley for information

about the article." (Doc. 279, at 10.) The Court agrees with Plaintiff that the document applies to Plaintiff's EMTALA claim and, as such, the state law privilege does not apply. The document is to be produced.

> **F.  Letter & supporting documents to Outside Organization in response to 4/17/2018 letter (Object that further specificity will waive the privilege).**

Wesley describes this document as its "[r]esponse letter to the Joint Commission." (Doc. 272, at 13.) Wesley contends the document "contains no firsthand information – only Wesley's counsel's interpretation of D.M.'s Wesley emergency department chart as applied to Joint Commission standards." (*Id*.) The Court finds that the document relates to Plaintiff's EMTALA claim and, as such, the state law privilege does not apply.

Wesley also objects to production of this document on the basis of the attorney work-product and attorney-client privilege. (Doc. 272, at 13.) Plaintiff argues that "Wesley's assertion of attorney work-product and privilege is late and waived" because Wesley "did not raise this objection and the letter was shared to a third party …" (Doc. 279, at 10.) The Court agrees that any privilege has been waived by Wesley. The document is to be produced.

> **G.  Facility Ethics and Compliance Committee Meeting Minutes for Wesley Medical Center.**

Wesley contends that "[t]his document does not relate to the EMTALA claim in this case, the care provided to Plaintiff or the facts of this case," while

conceding that the document contains "a very brief reference to the conclusion of the regulatory site visit at the hospital." (Doc. 272, at 13.) Plaintiff's response to Defendants' motions does not address this document or the arguments raised by Defendant(s). As such, this portion of Defendants' motion is **GRANTED** as uncontested.

### H. Via Christi documents.

Via Christi asks the Court to reconsider its prior ruling as to only four pages. The first of these documents is Bates No. VCHW-R000017, which Via Christi describes as a "document concerning care provided on the inpatient floor at Via Christi after plaintiff was admitted to the hospital," thus it "does not concern care provided in the emergency room." (Doc. 274, at 4.)

Plaintiff argues that this document is relevant to the EMTALA claim because "Via Christi's emergency department improperly screened him before transferring him to inpatient care." (Doc. 279, at 7.) Thereafter, Plaintiff "remained unstable in Via Christi's inpatient floor and ultimately suffered a stroke on that floor," which, according to Plaintiff, "tends to support the claim that D.M. was screened improperly and transferred from the emergency department before stabilization." (*Id*.) Plaintiff continues that "[t]hese failures were the impetus for further improper care on the inpatient floor and the preventable stroke suffered by D.M. on the inpatient floor tends to support that claim." (*Id*.)

13

Via Christi next refers to the Court to Bates Nos. VCHW-R000057–VCHW-R000059, which it describes as "documents 'from Ascension's internal claims system noting that claims had been filed against certain Ascension insureds and setting initial reserve amounts.'" (Doc. 274, at 4.) Via Christi contends that these documents are irrelevant to Plaintiff's EMTALA claim "because they do not relate to emergency room care." (*Id*.)

Plaintiff argues that Via Christi is "less forthright" in its motion as to "what these documents contain than it was in its privilege log description." (Doc. 279, at 8.) According to Plaintiff,

> [i]n its motion, Via Christi claims these documents only note that claims had been filed against certain Ascension insured's in this case and set initial reserve amounts. The truth, however, as Via Christi previously disclosed in its privilege log, is these documents 'contain information regarding details of event.' (Ex. 1, Via Christi Privilege Log, at VCHW-R000057-59). Information regarding details of event is directly related to Plaintiff's EMTALA claim.

(*Id*.) Plaintiff also argues that it would be improper for the Court to consider Via Christi's "newly raised argument." (*Id*.)

Via Christi anticipated that Plaintiff would argue "this is not a proper matter for reconsideration because Via Christi failed to bring its strongest argument in response to plaintiff's motion." (Doc. 274, at 4.) Via Christi disagrees, however, noting that it responded "to the only argument [P]laintiff made" because Plaintiff

14

"never argued (either in his motion or in pre-motion communications among counsel) that there was no applicable privilege due to the EMTALA claim." (*Id.*) Rather, according to Via Christi, "[t]he issue was raised by the Court *sua sponte* in the order to compel." (*Id.*)

Defendant is correct that the Court raised the issue *sua sponte*. As such, the Court will not deny Defendant's motion on this basis. That stated, the Court **DENIES** this portion of Defendant's motion because the documents at issue clearly relate to Plaintiff's EMTALA claim given the broad scope of discovery. The documents are to be produced.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Reconsider (Docs. 272, 274) are **GRANTED in part** and **DENIED in part** as more fully set forth above. The motions are **GRANTED** to the extent the Court has reconsidered its prior ruling and allowed Defendants to present argument as to whether the Court should recognize a federal court peer review and/or risk management privilege. The Court, however, **DENIES** Defendants' request to recognize the privilege in federal court. The Court further **ORDERS** the production of certain documents as discussed herein. All documents ordered to be produced herein shall be submitted to Plaintiff, without further objection, **within thirty (30) days of the date of this Order**.

IT IS SO ORDERED.

Dated this 6th day of May, 2019, at Wichita, Kansas.

                                          S/ KENNETH G. GALE
                                          HON. KENNETH G. GALE
                                          U.S. MAGISTRATE JUDGE