# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

D.M., a minor, by and through )
his next friend and natural guardian, )
KELLI MORGAN, )
                                 )
                       Plaintiff, )
                                 )
v. )    Case No.: 18-2158-KHV-KGG
                                 )
WESLEY MEDICAL CENTER LLC )
d/b/a WESLEY MEDICAL )
CENTER-WOODLAWN, *et al.*, )
                                 )
                       Defendants. )
_____)

## MEMORANDUM & ORDER ON MOTION
## TO QUASH OR MODIFY SUBPONEA TO NON-PARTY

Now before the Court is the "Motion to Quash or Modify Plaintiff's Subpoena to Non-Party CarePoint, LLC" filed by Defendant Wesley Medical Center (hereinafter "Wesley" or "Defendant"). (Doc. 264.) Having reviewed the submissions of the parties, the Court **DENIES** Defendant's motion.

## BACKGROUND

Plaintiff, through his natural guardian and next friend, filed his federal court Complaint on April 9, 2018, alleging claims under Kansas medical malpractice laws and under the Federal Emergency Medical Treatment and Active Labor Act. The claims result from the medical care he received on March 5 and 6, 2017.

Plaintiff alleges that on March 6, 2017, he "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.)

Plaintiff filed a Notice of Subpoena (Doc. 250) on January 7, 2019, informing the parties that a subpoena for documents would be served on non-party CarePoint. CarePoint employed Defendants Bridget Grover and Dr. Gregory Faimon at the time Plaintiff was treated in Wesley's Woodlawn emergency room. Wesley contends it has standing to bring the present motion (Doc. 264, at 2) and Plaintiff does not contest this (*see generally* Doc. 277). Wesley argues that the subpoena seeks several categories of documents that are protected by the risk management and peer review privileges, seeks irrelevant yet confidential proprietary information, and are duplicative of document requests made to Wesley. (*See generally* Docs. 264, 283.) Plaintiff contends that the privileges are inapplicable, the information requested is both relevant and not confidential, and the categories of documents requested are not duplicative. (*See generally* Doc. 277.)

## ANALYSIS

I. **Legal Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

**II.     Application of Peer Review and Risk Management Privileges.**

As an initial matter, the Court notes that Defendant has previously acknowledged "that no federal peer review privilege has been recognized by the Supreme Court or the Tenth Circuit." (Doc. 272, at 3 (citing Doc. 267, at 7; ***Sellers***, 2012 WL 5362977, at *2, *3; ***Sonnino v. University of Kansas Hosp. Auth.***, 220 F.R.D. 633, 644 (D. Kan. 2004).)  In its motion to reconsider the Court's prior Order regarding the application of the privileges, Wesley argued that the Court should "find that a federal peer review privilege is applicable under the facts of this case." (*Id.*)  Wesley continued that recognition of the privilege by this Court would "serve public and private interests," such as the provision of an

3

acceptable quality health care, which Wesley states is "essential to the well-being of [the] citizens [of Kansas] …" (Doc. 272, at 5.)

The Court has extensively addressed and analyzed the privileges in its prior Order on Defendants' Motion to Reconsider. (Doc. 333, at 6-8.) That analysis is incorporated herein by reference. The Court will not further analyze the application of the privileges. That stated, this Court held that

> the fact remains that the peer review and risk management privileges have not been recognized in this District or the Tenth Circuit. In the absence of Congressional directive, this Court should be cautious imposing restrictions on the discovery of evidence relevant to federal claims. Defendants have not persuaded the Court to recognize an entirely new federal court privilege under the circumstances presented.

(*Id.*, at 8.) The Court applies this prior holding to the arguments raised by the parties herein. As such, the Court **DENIES** Defendant's Motion to the extent it seeks to quash subpoena categories Nos. 6, 13, 22-32, 40, and 42 based on the application of the peer review and risk management privileges in federal court.

Further, Defendant has failed to establish that the requested information is relevant only to Plaintiff's state law cause of action (for with the Kansas statutory privileges would be applicable). Defendant concedes that CarePoint "is the employer of various healthcare providers (including physicians, physician assistants, and APRNs) practicing in Wesley's Woodlawn emergency room. …" (Doc. 264, at 3.) Defendant then attempts to argue that "plaintiff's [subpoena]

requests to CarePoint … ask for categories of documents not relevant to proving an EMTALA violation." (Doc. 283, at 2.) Defendant then contends that "EMTALA does not set a federal standard of care or replace pre-existing state medical negligence laws and EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." (*Id*.) Thus, Defendant appears to take the position that certain documents are relevant only to Plaintiff's state law cause of action – to which the Kansas statutory privileges would apply – rather than to the federal EMTALA claim – to which the privileges would not apply. The Court, however, fails to see, and Defendant has failed to establish, how documents maintained by the company that employs the health care providers **working in Defendant's emergency room** would be irrelevant to Plaintiff's EMTALA claim. The Court **DENIES** the portion of Defendant's motion relying on this argument.

III. Request No. 46.

    A. Relevance.

Subpoena Request No. 46 seek "[a]ny and all policies, procedures, guidelines on staffing of the Wesley Woodlawn emergency room for CarePoint, P.C. that were in effect at the time [plaintiff] presented." (Doc. 264-1.) Defendant argues that policies regarding "staffing of the Wesley Woodlawn emergency room" are irrelevant to the claims or defenses asserted by the parties. (Doc. 264, at

7.) Defendant contends that Plaintiff "has made no claim or allegations that the Wesley Woodlawn emergency room was understaffed. Plaintiff had virtually no wait before he was seen, so any sort of understaffing claim is not anticipated." (*Id*.)

Plaintiff contends the information is relevant to numerous allegations in the Complaint, including:

> Defendant "utilizes mid-level practitioners … to staff its emergency room in order to reduce its costs, which "comes at the price of patient care";
>
> the Kansas Board of Healing Arts previously determined that Defendant Grover "committed fraud in connection with her attempt to renew her medical license";
>
> Plaintiff was "never seen by a physician, never given a neurological assessment, and no imaging of the head was ever considered, ordered or performed" while at Defendant Wesley; and
>
> Defendant Faimon was responsible for supervising Defendant Grover, but Faimon never saw D.M. nor did he review D.M.'s chart until after D.M. was discharged."

(Doc. 277, at 2-3.) In other words, Plaintiff contends that Defendants Faimon and Grover were employees of CarePoint working at Defendant Wesley's emergency room when Plaintiff presented there. (*Id*., at 3.) Plaintiff further contends that CarePoint's "staffing policies and procedures are relevant to support the allegation that Wesley uses mid-level practitioners from CarePoint to staff [Defendant] Wesley's emergency department, which reduces the standard of care Wesley offers

to emergency room patients while lining Wesley's pockets." (*Id.*) The Court agrees that that, for the purposes of discovery, the information sought by Request No. 46 clearly relevant to Plaintiff's allegations. The Court **Denies** the portion of Defendant's Motion to Quash relying on this argument.

B. **Confidential Proprietary Information.**

Defendant also argues that Request No. 46 should be quashed because "acuity and census formulas and systems (that is, the tools used by Wesley to make staffing decisions) are confidential, proprietary information and the court should quash this request." (Doc. 264, at 7 (citing Fed.R.Civ.P. 45(d)(3)(B)(i); Fed.R.Civ.P. 26(c)(1)(G).) Defendant continues that CarePoint's status a contractor would not give it "the right to disclose Wesley's confidential, proprietary information." (*Id.*)

Plaintiff responds that Defendant's concerns as to producing confidential information "are resolved by this Court's Protective Order wherein the parties and Court acknowledged that 'during the course of discovery it may be necessary to disclose certain confidential information …'." (Doc. 277 (quoting Doc. 192.)) The Protective Order also specifically anticipated that Plaintiff's claims "will require factual support from all parties concerning issues involving … proprietary information of health care facilities, and various other confidential information." (Doc. 192.) According to Plaintiff, Defendant's "remedy for concerns over

7

proprietary or confidential information is not a motion to quash; rather, it is an assertion upon production that the material is confidential and proprietary thereby placing it under the Protective Order's umbrella." (Doc. 277, at 4.) Plaintiff also points out that the Protective Order provides that its provisions extend "'to Confidential Information produced in this case by third parties, if timely requested by the third party.'" (*Id*. (quoting Doc. 192, at 8.)

The Court agrees with Plaintiff. Courts in this District, including the undersigned Magistrate Judge, have routinely held that a document being "confidential" does not equate to being privileged or otherwise shielded from discovery. **Benney v. Midwest Health, Inc.**, No. 17-2548-HLT-KGG, 2018 WL 6042591, at *5 (D. Kan. Nov. 19, 2018).

> It is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery. 'A concern for protecting confidentiality does not equate to privilege.' While a confidentiality objection may be appropriate when a party seeks a protective order limiting the parties' use or disclosure of confidential information, it is generally not a valid objection to withholding discovery altogether.

*Id.* (quoting **High Point SARL v. Sprint Nextel Corp.**, No. 09-2269-CM-DJW, 2011 WL 4008009, at *1 (D. Kan. Sept. 9, 2011) (citations and footnotes omitted); **AKH v. Universal Underwriters Ins. Co.**, No. 13-2003-JAR-KGG, 2017 WL 5465240, at *15 (D. Kan. Nov. 14, 2017)). The Court **DENIES** this portion of

Defendant's motion and finds that any such documents can be produced in accordance with the Protective Order entered in this lawsuit.

## IV. Duplicative Requests.

Finally, Defendant argues that Plaintiff's subpoena to CarePoint "contains document requests that are essentially identical to document requests already propounded to Wesley as a party, with the only difference being a slight change of wording to account for the request being directed to CarePoint." (Doc. 264, at 8 (comparing Doc. 264-1 with Doc. 264-2).) As such, Defendant argues that the requests "are unreasonably cumulative, duplicative and the relevant material has already been produced" by Defendant. (*Id*., at 9.)

Plaintiff points out, however, that it is requesting documents maintained by CarePoint, not Defendant Wesley. (Doc. 277, at 5.) Plaintiff continues

> [f]rom CarePoint, Plaintiff seeks CarePoint's medical staff rules applicable to CarePoint employees' contract work at Wesley. From Wesley, Plaintiff seeks Wesley's medical staff rules applicable to any staff performing work at Wesley's emergency department. The same is true of each request Wesley calls duplicative. Plaintiff seeks Wesley's documents from Wesley, and CarePoint's documents from CarePoint. Plaintiff is not asking CarePoint to produce Wesley's documents; rather, it is asking CarePoint to produce its documents that apply to CarePoint employees' work at Wesley. There is no duplicity.

(*Id*.) Plaintiff also contends that he "has no way of knowing" whether CarePoint's documents are the same as Defendant's documents "unless CarePoint produces the

documents." (*Id.*) For instance, according to Plaintiff, "[e]ven if CarePoint has adopted Wesley's policies, Plaintiff is entitled to discover that information by requesting CarePoint produce the adopted policies in order to determine which policies have been adopted and which have not." (*Id.*) As Plaintiff correctly points out, this Court has held that

> [p]arties may choose the manner and method in which they conduct discovery. The Federal Rules provide several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices.

*McCloud v. Bd. Of Geary Cnty. Comm'rs*, No. 06-1002-MLB, 2008 WL 3502436 at *2 (D. Kan. Aug. 11, 2008) (citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. 9402395–GTV, 1995 WL 625962, at *5 (D. Kan. Oct. 5, 1995). The Court thus **DENIES** this portion of Defendant's motion.

**IT IS THEREFORE ORDERED** that Defendant's Motions to Quash (Doc. 264) is **DENIED**.

IT IS SO ORDERED.

Dated this 24th day of May, 2019, at Wichita, Kansas.

           S/ KENNETH G. GALE
           HON. KENNETH G. GALE
           U.S. MAGISTRATE JUDGE