# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

D.M., a minor, by and through his next friend )
and natural guardian, KELLI MORGAN, )
)
                Plaintiff, )
) CIVIL ACTION
v. )
) No. 18-2158-KHV
WESLEY MEDICAL CENTER LLC d/b/a )
WESLEY MEDICAL CENTER-WOODLAWN, et al., )
)
                Defendants. )
)

## MEMORANDUM AND ORDER

D.M., a minor, by and through his next friend and natural guardian, Kelli Morgan, brings suit against Wesley Medical Center LLC d/b/a Wesley Medical Center-Woodlawn ("WMC"); Wesley-Woodlawn Campus; Bridget Grover, PA-C; Dr. Gregory Faimon; Lisa Judd, RN; Via Christi Hospitals Wichita, Inc. ("Via Christi"); Jennifer Chambers-Daney, ARNP; Dr. Bala Bhaskar Reddy Bhimavarapu; CEP America-KS LLC; Dr. Connor Hartpence; Dr. Stefanie White; Dr. Jamie Borick; and Aaron Kent, RN. This matter comes before the Court on the Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In Amended Complaint (Doc. #129) which Hartpence, White and Borick filed September 18, 2018 and the Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In Amended Complaint (Doc. #145) which WMC and Judd filed September 28, 2018.[1] For reasons

---

[1] The remaining defendants join in one or both motions. See Chambers-Daney's Motion And Memorandum To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim (Doc. #123) filed September 14, 2018; Defendant Faimon's Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #147) filed September 28, 2018; Defendant Grover's Motion To Dismiss Plaintiff's Claim For Punitive

(continued...)

stated below, the Court overrules both motions.

**Factual Assertions**

Highly summarized, plaintiff alleges the following facts:

At 6:32 p.m. on March 5, 2017, when he was five years old, plaintiff arrived at the emergency room of WMC with a severe headache, slurred speech, photophobia, dizziness, imbalance, vomiting, disorientation, weakness and extreme lethargy. First Amended Complaint (Doc. #121) filed September 11, 2018 ¶¶ 37-41. Pursuant to WCM internal policies and procedures, Judd (an RN) triaged plaintiff as non-urgent general care, which triggered the involvement of Grover (a physician's assistant). Id. ¶¶ 42-47. Grover performed a cursory physical examination and failed to perform or refer plaintiff for a neurological assessment. Id. ¶ 50. A proper neurological assessment would have revealed elevated intracranial pressure and severe neurologic abnormalities. Id. ¶ 50. Instead, Grover ordered a strep test which came back positive.

At 7:06 p.m., WCM discharged plaintiff with a prescription for amoxicillin. Id. ¶ 53. WCM provided no explanation for his symptoms, which had worsened since the time of his arrival. Id. ¶ 54. Dr. Faimon was responsible for supervising Grover, but he did not see plaintiff or review plaintiff's chart before discharging him. Id. ¶¶ 65-66.

---

[1](...continued)
Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #148) filed September 28, 2018; Defendant Via Christi Hospitals Wichita, Inc. And Aaron Kent, RN's Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #157) filed October 2, 2018; Defendant CEP America – Kansas, LLC's, Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #166) filed October 9, 2018.

After WCM discharged plaintiff, his condition deteriorated. Id. ¶ 75. By 1:30 a.m. on March 6, plaintiff was difficult to rouse, his headache was worse, he vomited uncontrollably and he failed to respond to basic questions. Id. ¶ 78. Plaintiff's parents tried to call two different hospitals and departed for Via Christi in Wichita, Kansas. Id. ¶ 79.

At 2:22 a.m., plaintiff's mother carried him into the emergency room at Via Christi. Id. ¶¶ 80-22. Plaintiff's mother informed emergency personnel of his sudden onset of headache, nausea, intractable vomiting, lethargy, weakness, unbalance, dizziness, slurred speech, photophobia, inability to respond to basic questions, inability to walk and knee joint pain, and the previous visit to the WCM emergency room. Id. ¶ 82.

At 2:31 a.m., Kent (an RN) triaged plaintiff and noted the following chief complaint: "nausea and vomiting, was just diagnosed with strep tonight at Wesley, mom concerned unable to keep meds down to treat it." Id. ¶ 83. Kent failed to note plaintiff's other symptoms, which clearly indicated the need for an immediate neurological assessment and CT scan of the head. Id. ¶¶ 84-85. At that time, plaintiff had abnormal vital signs. Id. ¶ 86.

Pursuant to Via Christi internal policies and procedures, Kent triaged plaintiff as non-urgent general care, which triggered the involvement of Chambers-Daney, an advanced registered nurse practitioner. Id. ¶¶ 87, 90. Plaintiff waited two hours to see Chambers-Daney. Id. ¶ 88. During this time, his intracranial pressure continued to build. Id. ¶ 94. Plaintiff's vital signs revealed that his systolic blood pressure was elevated, he was hyperglycemic, his breathing rate was reduced, and his heart rate was low – all signs of increased intracranial pressure. Id. ¶ 95.

At 4:48 a.m., Chambers-Daney saw plaintiff. Id. ¶ 93. She performed a history and charted that plaintiff presented with a sore throat and was vomiting and unable to keep medicine down. Id. ¶

96. Chambers-Daney admitted plaintiff for observation with the following symptoms: viral pharyngitis, strep throat, viral syndrome and upper respiratory infection. Id. ¶ 97. She failed to note that plaintiff suffered from debilitating headache, inability to walk, severe lethargy, weakness, dizziness, slurred speech, photophobia, inability to answer basic questions and severe imbalance. Id. ¶ 98.

At 5:18 a.m., junior resident physicians White and Hartpence saw plaintiff and performed a history of his symptoms. Id. ¶ 104. They charted nausea, vomiting, headache and dizziness. Id. White and Hartpence ordered staff to check plaintiff's vital signs hourly; they specifically "deferred" a neurological assessment to a later time, noting as follows: "deferred, pt sleeping, will re-evaluate on the floor." Id. ¶ 107. White and Hartpence consulted with Dr. Bhimavarapu, who agreed with their plan to defer a neurological assessment and admitted plaintiff to the Observation Unit. Id. ¶¶ 108, 109.

At 6:58 a.m., Borick, a first-year family practice resident, saw plaintiff. Id. ¶ 110. Borick noted that plaintiff was "non-arousable" and "very sleepy." Id. ¶ 111. Borick failed to perform a neurological assessment or any physical exam of plaintiff's head or eyes. Id. Despite plaintiff's worsening condition, Borick planned to discharge him later that day. Id. ¶ 112.

For three hours, plaintiff was left alone in a room with his mother. Id. ¶ 114. During this time, his condition continued to deteriorate. Id.

At approximately 10:00 a.m., plaintiff suffered a medically preventable stroke as a result of unsustainable intracranial pressure. Id. ¶ 115. Plaintiff became unresponsive in his mother's arms and stopped breathing. Id. ¶ 116. At approximately 10:02 a.m., a Code Blue was initiated because plaintiff's mother began screaming for help. Id. ¶ 117.

As a result of the Code Blue, plaintiff for the first time received an evaluation by a board-certified physician, who ordered a CT scan. Id. ¶¶ 119-120. The CT scan revealed a brainstem tumor and significant obstructive hydrocephalus, which caused persistent intracranial pressures. Id. ¶¶ 121-122.

Plaintiff had surgery to relieve the pressure and cut back the tumor. Id. ¶ 122. Pathology revealed that plaintiff had a very treatable form of medulloblastoma[2] with a high probability of survival with requisite care and treatment. Id. ¶ 123. Prior to surgery, because of the unsustainable intracranial pressures caused by the obstructive hydrocephalus, plaintiff suffered a significant brainstem stroke. Id. ¶ 124. Had defendants performed a timely neurological assessment, they would have ordered a CT scan before the stroke and would have had ample time to relieve the pressure before the stroke. Id. ¶¶ 125-127.

The stroke rendered plaintiff permanently disabled. Id. ¶ 128. Plaintiff now suffers from permanent right-side paralysis, significant neurological deficits, permanent impaired eye movement, permanent difficulty swallowing, slowed speech, permanent truncal ataxia known as "drunken sailor" gait characterized by uncertain starts and stops and unequal steps, and difficulty speaking. Id. Plaintiff is now wheelchair dependent. Id.

---

[2] Medulloblastoma is a cancerous brain tumor that starts in the lower back part of the brain (cerebellum) and tends to spread through the cerebrospinal fluid to other areas around the brain and spinal cord. See Mayo Clinic, Patient Care & Health Information, Diseases & Conditions, Brain Tumor (https://www.mayoclinic.org/diseases-conditions/medulloblastoma/cdc-20363524) (last visited June 10, 2019).

## Analysis

Against all defendants, plaintiff asserts medical negligence (Count I).[3] First Amended Complaint (Doc. #121) at 30-32. Against WMC and Via Christi, plaintiff also asserts claims for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd et seq. (Counts II and III).[4] First Amended Complaint (Doc. #121) at 33-34. In addition, as to all defendants, plaintiff seeks punitive damages (Count IV).[5] Id. at 35-37.

Defendants assert that as a matter of law, the Court should dismiss or strike plaintiff's claim for punitive damages because he has not complied with K.S.A. § 60-3703. See Memorandum Brief In Support Of Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In The Amended Complaint ("Hartpence, White And Borick Memorandum") (Doc. #130) filed September 18, 2018 at 1-22; Memorandum Brief In Support Of Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In Amended Complaint ("Wesley And Judd Memorandum") (Doc. #146) filed September 28, 2018 at 2-9. Although defendants do not distinguish plaintiff's claims for punitive damages under state law (medical negligence) and federal law (violation of EMTALA), the Court construes their arguments

---

[3] As to the medical negligence claims, plaintiff asserts that the Court has diversity jurisdiction under 42 U.S.C. § 1332(a)(1). Plaintiff does not assert supplemental jurisdiction under 28 U.S.C.§ 1367. See First Amended Complaint (Doc. #121) ¶ 22.

[4] With respect to the EMTALA claims, plaintiff asserts that the Court has federal question jurisdiction under 28 U.S.C. § 1331. First Amended Complaint (Doc. #121) ¶ 22.

[5] Plaintiff does not state whether he seeks punitive damages with respect to the medical negligence claims, EMTALA claims, or both. See First Amended Complaint (Doc. #121) at 35-37. The EMTALA provides that "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(2)(A).

as applying to any state law punitive damages claims over which the Court has diversity jurisdiction.

Section 60-3703 states as follows:

> No tort claim or reference to a tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed on or before the date of the final pretrial conference held in the matter.

K.S.A.§ 60-3703.

Defendants acknowledge that at least 30 times over the last 20 years, judges in this Court have found that Section 60-3703 is a purely procedural statute which does not apply in diversity actions in federal court. See Hartpence, White And Borick Memorandum (Doc. #130) at 1-2 (citing Pappe v. ACandS, Inc., No. 95-2175-GTV, 1995 WL 405107, at *1 (D. Kan. June 16, 1995)). Defendants further acknowledge "the apparent audacity of requesting the Court to reconsider a ruling which has been reaffirmed so many times." Hartpence, White And Borick Memorandum (Doc. #130) at 1. Defendants nevertheless urge the Court to reverse its long-standing precedent. Specifically, defendants assert that the reasoning underlying the Court's decisions is no longer valid under the United States Supreme Court ruling in Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010). See Hartpence, White And Borick Memorandum (Doc. #130) at 2-22.

**I.      Legal Framework To Determine If State Law Or Federal Rule Governs**

Under Erie R. Co. v. Tomkins, 304 U.S. 64 (1938), in diversity cases, federal courts apply state substantive law and federal procedural law. See Racher v. Westlake Nursing Home Ltd.

-7-

P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017). If a federal rule of civil procedure addresses a matter in dispute, the federal rule governs so long as it does not "exceed[] statutory authorization or Congress's rulemaking power." Id. (quoting Shady Grove, 559 U.S. at 398). When faced with an alleged conflict between a federal rule and a state law or rule, the Court follows the two-step framework set forth by Justice Stevens in his concurring opinion in Shady Grove.[6] See Racher, 871 F.3d at 1162. First, the Court decides whether the scope of the federal rule is sufficiently broad to control the issue before the Court, thereby leaving no room for the operation of seemingly conflicting state law. Racher, 871 F.3d at 1162 (quoting Shady Grove, 559 U.S. at 421). A conflict exists if there is "direct" "unavoidable" collision between the federal rule and the state law. Racher, 871 F.3d at 1163 (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980)). If such a conflict exists, the Court must determine whether the federal rule is valid, i.e. whether it constitutes a valid exercise of authority by the Supreme Court under the Rules Enabling Act, 28 U.S.C. § 2072.[7]

---

[6] The Tenth Circuit has recognized that Justice Stevens's concurrence is controlling. See Racher, 871 F.3d at 1162 ("[W]e follow the framework described by the Supreme Court in Shady Grove, as laid out by Justice Stevens in his concurring opinion."); James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1217 (10th Cir. 2011) ("Tenth Circuit has understood [Justice Stevens's] concurrence to be the controlling opinion in Shady Grove."); Garman v. Campbell Cty. Sch. Dist. No. 1, 630 F.3d 977, 983 n.6 (10th Cir. 2010) (we look to Justice Stevens's concurrence for analysis regarding whether federal rule or state law governs); but see Jones v. UPS, Inc., 674 F.3d 1187, 1203-06 (10th Cir. 2012) (citing pages of Justice Scalia's plurality opinion in Shady Grove with no mention of Justice Stevens's concurrence).

[7] The Rules Enabling Act states as follows:

**(a)** The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

**(b)** Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

(continued...)

-8-

See Racher, 871 F.3d at 1163-64 (citing Shady Grove, 559 U.S. at 406-07, 422). Under the Rules Enabling Act, the Supreme Court may not "abridge, enlarge or modify a substantive right." 28 U.S.C. § 2072(b). In determining whether a federal rule abridges, enlarges or modifies a state substantive right, the Court looks past its form; in other words, even a state rule which is "procedural" in the ordinary sense of the term, "may exist to influence substantive outcomes, and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." Racher, 871 F.3d at 1164 (quoting Shady Grove, 559 U.S. at 419-20). Ultimately, the Court must determine "whether the federal procedural rule has displaced 'a State's definition of its own rights or remedies.'" Racher, 871 F.3d at 1164 (quoting Shady Grove, 559 U.S. at 418).

## II. Application Of Legal Framework In This Case

As discussed, in deciding whether the federal rules of civil procedure or K.S.A. § 60-3703 govern the pleading requirements for plaintiff's punitive damages claim, the Court first decides whether a direct conflict exists between the federal rules and the state law. If so, the Court determines whether the federal rules are a valid exercise of authority under the Rules Enabling Act.

### A. Direct Conflict

As discussed, the Court must first decide "whether the scope of the [federal rules are]

---

[7](...continued)

**(c)** Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

28 U.S.C. § 2072 (emphasis in original). Through the Rules Enabling Act, Congress authorized the Supreme Court to adopt rules of "procedure," i.e. rules governing "the judicial process for enforcing rights and duties recognized by substantive law for justly administering remedy and redress for disregard or infraction of them." Hanna v. Plumer, 380 U.S. 460, 464 (1965).

sufficiently broad to control the issue before the [C]ourt, thereby leaving no room for the operation of seemingly conflicting state law." Racher, 871 F.3d at 1162 (quoting Shady Grove, 559 U.S. at 421) (quotations and citations omitted). A conflict exists only if there is "direct collision" between federal and state law which is "unavoidable." Racher, 871 F.3d at 1163 (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 750 n.9 (1980)).

Here, the Court finds that an unavoidable conflict exists between K.S.A. § 60-3703 and federal pleading rules. Under K.S.A. § 60-3703, plaintiff may not include a claim for punitive damages in the petition or any other pleading without first filing a motion which demonstrates a probability that he will prevail on the claim. By contrast, Rule 8(a)(3), Fed. R. Civ. P., requires that plaintiff include in his complaint "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3).[8] In addition, with respect to amendments to the complaint, Rule 15(a)(2), Fed. R. Civ. P., instructs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[9] Thus, while the

---

[8] Rule 8(a) states as follows:

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:
    **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
    **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
    **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (emphasis in original).

[9] Rule 15(a) states as follows:

**(a) Amendments Before Trial.**
**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:
    **(A)** 21 days after serving it, or

(continued...)

Kansas statute prohibits plaintiff from pleading punitive damages without leave of Court supported by the evidence, federal rules require him to assert such claim and allow amendment to assert such a claim without an evidentiary showing in support of the claim. Under these circumstances, an unavoidable conflict exists.[10] See, e.g., Jenkins v. Immedia, Inc., No. 13-cv-00327-CMA-KLM, 2019 WL 1875501, at *4-5 (D. Colo. April 25, 2019) (Minnesota statute prohibiting claim for punitive damages in initial pleading conflicts with Fed. R. Civ. P. 15); Otto v. Newfield Exploration Co., No. CV 15-66-BLG-SPW, 2017 WL 3616712, at *1-2 (D. Mont. Feb. 22, 2017) (North Dakota law allowing amendment to include punitive damages claim only by filing motion showing evidentiary basis for claim in "direct collision" with Fed. R. Civ. P. 15(a)(2)).

---

[9](...continued)
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> **(3) Time to Respond.** Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a) (emphasis in original).

Under Rule 15(a) the Court will generally deny leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. See Duncan v. Manager, Dept. of Safety, City & Cty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)

[10] The parties dispute whether Rule 9(g), Fed. R. Civ. P., requires plaintiff to specifically claim punitive damages as "an item of special damage." See, e.g., Holick v. Burkhart, No. 16-1188-JWB-KGG, 2018 WL 4052154, at *6 (D. Kan. Aug. 24, 2018) (disagreeing with "a number of cases in this district" that have concluded that punitive damages are special damages). Because the Court finds that a conflict exists based on Rules 8 and 15, Fed. R. Civ. P., it does not address this argument.

### B. Validity Under Rules Enabling Act

Because a direct conflict exists, the Court must decide whether the federal rules constitute a valid exercise of authority by the Supreme Court under the Rules Enabling Act, 28 U.S.C. § 2072. In other words, the must Court determine whether the federal rules "abridge, enlarge or modify" a substantive right under state law. 28 U.S.C. § 2072(b); see Racher, 871 F.3d at 1163-64 (citing Shady Grove, 559 U.S. at 406-07, 422). Ultimately, the Court looks to "whether the federal procedural rule has displaced 'a State's definition of its own rights or remedies.'" Racher, 871 F.3d at 1164 (quoting Shady Grove, 559 U.S. at 418).

In NAL II, Ltd. v. Tonkin, 705 F. Supp. 522 (D. Kan. 1989), the late District Judge Dale E. Saffels found that K.S.A. § 60-3703 is purely procedural in nature and only affects "the time in a lawsuit when a court determines whether a claim for punitive damages is appropriate."[11] Id. at 527. Judge Saffels further found that failure to apply the state statute in federal court would not materially affect the character or result of the litigation. See id. at 528. In so finding, Judge Saffels noted that under federal rules – even absent the Kansas statute – the court may determine whether punitive damages are appropriate in the context of motions for summary judgment and objections to jury

---

[11] In so finding, Judge Saffels concluded that the K.S.A. § 60-3703 – which was newly enacted at the time – would apply retroactively. Judge Saffels proceeded to analyze whether under Erie and Hanna, the state statute should apply in federal diversity cases. See Tonkin, 705 F. Supp. at 527. Judge Saffels found that under Hanna, the federal rule applies if it (1) directly conflicts with the state law; (2) is procedural in nature and within the scope of the Rules Enabling Act; and (3) is constitutional. See id. at 527-28. Based on his finding that Rule 9(g), Fed. R. Civ. P., required plaintiff to specifically state a claim for punitive damages, Judge Saffels found a "direct collision" between K.S.A. § 60-3703 and federal procedural rules. See id. at 528. Judge Saffels further found that the federal rule applied because it was procedural in nature, within the scope of the Rules Enabling Act and constitutional. See id. Alternatively, Judge Saffels found that even if no conflict existed, under Erie, the state statute would not apply in federal cases because it would not materially affect the character or result of the litigation. See id. at 528-29.

instructions on punitive damages.[12] See id. at 529.

Defendants assert that Judge Saffels was incorrect because to plead punitive damages under K.S.A. § 60-3703, plaintiff must do more than defeat a motion for summary judgment under Rule 56, Fed. R. Civ. P. See Hartpence, White And Borick Memorandum (Doc. #130) at 19-21; Wesley And Judd Memorandum (Doc. #146) at 7-9. Defendants note that the wording of Section 60-3703 is discretionary, in that even if plaintiff makes a satisfactory evidentiary showing, a judge "may" (and arguably may not) allow the filing of an amended pleading claiming punitive damages. Hartpence, White And Borick Memorandum (Doc. #130) at 20. Defendants assert that in light of this discretionary language, a state court can deny leave to assert a punitive damages claim even if plaintiff shows a probability of success on such claim. See id. at 20-21. Defendants provide no examples in which a Kansas state court has made such a ruling, and cite no cases which so construe K.S.A. § 60-3703. Decisions from the Kansas Supreme Court indeed suggest otherwise. See, e.g., Adamson v. Bicknell, 295 Kan. 879, 889, 287 P.3d 274, 281 (2012) (reversing denial of motion seeking punitive damages where trial court focused too narrowly on evidence in support thereof); Fusaro v. First Family Mortg. Corp., 257 Kan. 794, 802, 897 P.2d 123, 129 (1995) (where plaintiff presents evidence of sufficient caliber and quality to allow rational factfinder to find that defendant acted with willful or wanton conduct, fraud or malice, trial court "shall" allow amendment).

Defendants assert that K.S.A. § 60-3703 imposes a "much greater" evidentiary burden than Rule 56 because K.S.A. § 60-3703 requires plaintiff to show a "probability" that he will prevail on the punitive damages claim. Wesley And Judd Memorandum (Doc. #146) at 7. As applied by

---

[12] The Court can also address the matter on a motion to dismiss or motion for judgment as a matter of law. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Kansas courts, however, the burden on plaintiff is strikingly similar under both procedures. Under K.S.A. § 60-3703, the party seeking to add a claim for punitive damages must file a motion which presents evidence to support the claim, and defendant may present opposing evidence. See, e.g., Fusaro, 257 Kan. at 802, 897 P.2d at 129. The trial court must consider the evidence in the light most favorable to plaintiff and determine "if the evidence is of sufficient caliber and quality to allow a rational factfinder to find [by clear and convincing evidence] that defendant acted . . . with willful conduct, wanton conduct, fraud, or malice." Id.; see Lindsey v. Miami Cty. Nat'l Bank, 267 Kan. 685, 689, 984 P.2d 719, 722 (1999) (in deciding whether to allow punitive damages claim, Kansas courts consider evidence in light most favorable to moving party, "leaving credibility determinations, weighing of evidence, and the drawing of legitimate inferences to the jury"). If plaintiff satisfies this standard, "the trial court shall allow the amendment." Fusaro, 257 Kan. at 802, 897 P.2d at 129.

Under Rule 56, defendant may file a motion for summary judgment asserting lack of evidence to support a claim for punitive damages. See Fed. R. Civ. P. 56. To overcome such a motion, plaintiff must present evidence which demonstrates a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). In other words, plaintiff must present evidence which is sufficient to support his claim for punitive damages. The trial court must review the evidence in the light most favorable to plaintiff and determine if a reasonable jury could find by clear and convincing evidence that defendant acted with willful or wanton conduct, fraud or malice. See City of Herriman v. Bell, 590 F.3d 1176, 1181 (10th Cir. 2010); Ducharme ex rel. Rogers v. Bd. of Cty. Comm'rs of Butler Cty., Kan., No. 09-2338-JTM, 2011 WL 2173684, at *9 (D. Kan. June 2, 2011); P.S. ex rel. Nelson v. The Farm, Inc., 658 F. Supp.2d 1281, 1303 n.14 (D. Kan. 2009).

Defendants assert that applying the federal rules will eviscerate the intent of the Kansas legislature in enacting Section 60-3703, namely to curb "the use of unjustified punitive damage claims asserted early in a case, as a method of extracting unfair settlements." Hartpence, White And Borick Memorandum (Doc. #130) at 18-19. Even if defendants are correct as to legislative intent, they provide no information which supports their claim that Section 60-3703 produces fewer unfair settlements or provides any substantive rights or remedies in this regard.

Defendants assert that the failure to apply K.S.A. § 60-3703 in federal diversity cases will result in forum shopping, in that a plaintiff wishing to pursue a weak punitive damages claim will choose a federal forum. See Hartpence, White And Borick Memorandum (Doc. #130) at 21. The ultimate burden to prevail on such claim, however, remains the same in either court: Plaintiff must demonstrate by clear and convincing evidence that defendant acted with willful conduct, wanton conduct, fraud or malice. See K.S.A. § 60-3701(c);[13] Ducharme, 2011 WL 2173684, at *9; Nelson, 658 F. Supp.2d at 1303 n.14.

On this record, defendants have not shown that K.S.A. § 60-3703 "influence(s) substantive outcomes" and is "so bound up with the state-created right or remedy [of punitive damages] that it defines the scope of that substantive right or remedy." Racher, 871 F.3d at 1164 (quoting Shady Grove, 559 U.S. at 419-20). The Court finds that the federal rules constitute a valid exercise of

---

[13]   Section 60-3701(c) states as follows:

In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice.

K.S.A. § 60-3701(c).

authority under the Rules Enabling Act.  The Court therefore declines to apply K.S.A. § 60-3703 in this case.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In Amended Complaint (Doc. #129) which Dr. Connor Hartpence, Dr. Stefanie White and Dr. Jamie Borick Hartpence filed September 18, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim In Amended Complaint (Doc. #145) which Wesley Medical Center LLC d/b/a Wesley Medical Center-Woodlawn and Lisa Judd filed September 28, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion And Memorandum To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim (Doc. #123) which Jennifer Chambers-Daney filed September 14, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Faimon's Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #147) filed September 28, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Grover's Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support (Doc. #148) filed September 28, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Via Christi Hospitals Wichita, Inc. And Aaron Kent, RN's Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support

(Doc. #157) filed October 2, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Defendant CEP America – Kansas, LLC's, Motion To Dismiss Plaintiff's Claim For Punitive Damages Or, In The Alternative, To Strike Said Claim From The Amended Complaint And Memorandum In Support</u> (Doc. #166) filed October 9, 2018 is **OVERRULED**.

Dated this 12th day of June, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
