IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D.M., a minor, by and through )
his next friend and natural guardian, )
KELLI MORGAN, )
 )
      Plaintiff, )
 )
v. ) Case No.: 2:18-CV-02158-KHV-KGG
 )
WESLEY MEDICAL CENTER LLC )
d/b/a WESLEY MEDICAL )
CENTER-WOODLAWN, *et al.*, )
 )
      Defendants. )
_____)

## MEMORANDUM & ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel (Doc. 365), seeking production by non-party CarePoint, P.C. of certain documents shared with the insurer and attorneys for Defendants Dr. Faimon and P.A. Grover, both of whom are employed by CarePoint. Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED** for the reasons set forth below.

## BACKGROUND

Plaintiff, through his natural guardian and next friend, filed his federal court Complaint on April 9, 2018, alleging claims under Kansas medical malpractice laws and under the Federal Emergency Medical Treatment and Active Labor Act.

The claims result from the medical care he received on March 5 and 6, 2017. Plaintiff alleges that on March 6, 2017, he "suffered a catastrophic and medically-preventable stroke that left him with right-side paralysis, neurological damage and other debilitating physical injuries that permanently changed his and his parents' lives." (Doc. 1, at 5.)

Plaintiff earlier subpoenaed non-party CarePoint, seeking documents relating to correspondence between the non-party and Defendants Dr. Faimon and P.A. Grover, their attorney and/or their insurer. (Doc. 365, at 2.) Plaintiff does not dispute that Faimon and Grover are employed by CarePoint.

In addition, CarePoint does not dispute that it possesses information responsive to Plaintiff's requests. (Doc. 365, at 3.) Rather, CarePoint claims that the attorney for Defendants Faimon and Grover "requested that CarePoint not produce the documents on grounds that it is the work-product of or attorney-client privilege between Dr. Faimon and P.A. Grover, their attorney, or their insurer." (*Id.*, at 1.)

CarePoint served its responses and objections to Plaintiff's subpoena on July 20, 2019, objecting to Requests for Production Nos. 13, 23, 27, 29, 30, 32, 40, 42, and 47 on the basis of work-product or attorney-client privilege. (Doc. 365, at 2-3.) The objections to the Requests all indicate that CarePoint

> has copies of communications between it and the
> attorneys and insurers for defendant Faimon and

defendant Grover. These confidential communications
constitute work product of parties, their counsel and
insurers, pursuant to Fed. R. Civ. P26(b)(3). CarePoint
has been requested to protect these communications from
discovery.

(Doc. 365-1, at 5, 8, 9, 10, 12, & 13.)

CarePoint subsequently produced a Privilege Log for its objections to Plaintiff's requests. (Doc. 365, at 3.) Plaintiff now seeks production of the documents listed in rows 1 through 28 of the Privilege Log. (Doc. 365, at 3.) Plaintiff contends that " because Dr. Faimon and P.A. Grover's attorney and insurer disclosed the correspondence to third-party CarePoint, any privilege was waived." (*Id*., at 1.)

## ANALYSIS

I. **Legal Standard for Motion to Compel**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## II. Applicability of Work-Product or Attorney-Client Privilege

Fed.R.Civ.P. 26(b)(3) describes the general limitations on the discovery of work product, providing that, with limited exceptions, "documents and tangible things" prepared by a party or its agents "in anticipation of litigation or for trial" are not discoverable.

> To establish the applicability of work product privilege, [the withholding party] must show the following elements: '(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'

***U.S. Fire Ins. Co. v. Bunge North America, Inc.***, 247 F.R.D. 656, 657 (D. Kan. 2008) (*quoting* ***Johnson v. Gmeinder***, 191 F.R.D. 638, 643 (D. Kan. 2000) (citations omitted)).

A party's disclosure to a third-party of communications that would otherwise be protected by privilege acts as a waiver of privilege. ***In re Qwest Communications Intern. Inc.***, 450 F.3d 1179, 1185 (10th Cir. 2006) ("The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.") (*quoting* ***United States v. Ryans***, 903

F.2d 731, 741 n. 13 (10th Cir. 1990); ***Burton v. R.J. Reynolds Tobacco Co.***, 167 F.R.D. 134, 140 (D. Kan. 1996) ("Intentional disclosure to third parties of privileged information is a waiver of any privilege."). The party claiming the benefit of privilege carries the burden of showing that the privilege has not been waived. ***New Jersey v. Sprint Corp.***, 258 F.R.D. 421, 426 (D. Kan. 2009).

Plaintiff argues that because CarePoint is a third-party, the disclosure of the requested communications from Dr. Faimon and P.A. Grover's defense counsel or liability insurer to CarePoint and its general counsel act as a waiver of attorney-client privilege. (Doc. 365, at 5.) Plaintiff further contends that any work-product privilege objections are similarly waived, as "neither CarePoint nor its general counsel are Dr. Faimon or P.A. Grover's attorney, consultant, surety, indemnitor, insurer, or agent." (Doc. 365, at 5.)

**III.   Applicability of Common Interest Doctrine.**

While the attorney-client privilege and work product protection afforded to Defendants would normally be waived by sharing such documents with a third party such as CarePoint, "[t]he common interest doctrine … affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider dissemination of that information." ***U.S. Fire Ins. Co. v. Bunge North America, Inc.***, No. 05–2192 JWL–DJW, 2006 WL 3715927, at *1 (D. Kan., Dec. 12, 2006).

> For the common interest doctrine to attach, 'most courts ... insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.' 'The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'

*Sawyer v. Southwest Airlines*, Nos. 01–2385–KHV, 01–2386–KHV, 2002 WL 31928442 (D. Kan., Dec. 23, 2002) (citations omitted).

Plaintiff argues in its motion that CarePoint "shares no identical legal interests with Dr. Faimon and P.A. Grover in this lawsuit," and therefore the common interest doctrine is inapplicable. (Doc. 356, at 6.) Defendants Faimon and Grover contend that

> [i]n the original Complaint, Plaintiff asserted defendants Faimon and Grover were employed by Wesley. This assertion was denied in both Faimon's and Grover's Answer. There was a real concern CarePoint would be added as a party once Plaintiff appreciated defendants Faimon and Grover were not employed by Wesley but by CarePoint.
> Given the nature of the Complaint, the claims alleged and the expectation that Plaintiff intended to name every possible party that may have some arguable liability, counsel believed it likely CarePoint would be added to the suit. Advice and counsel was provided to CarePoint in that regard.

(Doc. 369, at 3.)

Defendants further contend that although Plaintiff has not (yet) added CarePoint as a party, Plaintiff *has* added the employer of co-Defendant Daney.[1] (*Id*., at 4.) Additionally, as of the filing of Defendant's response brief, the statute of limitations on a claim against CarePoint had not expired. (Doc. 370, at 7.) Even so, according to Defendants,

> Plaintiff's strategic decision [not to sue CarePoint] does not change the fact that CarePoint and defendants Faimon and Grover have a joint interest in defending the claims. Each has a common interest in defending the claims asserted and those that could be asserted. The facts of the claims are clearly intertwined and dependent and the legal interests of CarePoint, Dr. Faimon and PA Grover are shared and aligned.

(*Id.*)

Defendants argue that the information at issue "was not carelessly disclosed" to CarePoint, but rather that "[a]ll communications between counsel, the insurer and CarePoint occurred after the suit was filed and in anticipation that CarePoint would be named as a defendant." (*Id*., at 5, 6.) CarePoint contends that the documents were provided to it "because it shared and continues to share the same legal interest as Bridget Grover and Dr. Faimon, with the understanding and

---

[1] Defendants contend that CarePoint has not been added as a party because doing so would destroy diversity jurisdiction as CarePoint is a Colorado company and Plaintiff resides in Colorado.

7

expectation they would not be revealed to others involved in the litigation." (Doc. 370, at 3.)

> From the beginning of the lawsuit, the pleadings have contained claims that the Wesley Woodlawn ER was inadequately staffed. It requires no leap of logic to conclude that CarePoint faces potential liability since it has a contract to provide the staff to that ER. This fact alone is enough for this Court to conclude that the interest of CarePoint is identical to that of Faimon or Grover, since they are the persons who were assigned to that emergency Department when DM presented for care and treatment.

(Doc. 369, at 6.)

CarePoint argues that the liability it potentially faces "would of necessity be specifically related to, and dependent upon, the acts or omissions of Faimon and Grover." (*Id*., at 4.) Therefore, Defendants' "sharing of information … with CarePoint was directly related to the potential that CarePoint could be legally responsible for the actions of" Faimon and Grover. (*Id*.) CarePoint thus contends that its "interests are perfectly aligned with those of its employees, except and only to the extent that it might argue the employees were outside the scope of their employment at the time of the incidents in question." (*Id*., at 4-5.)

Defendants Grover and Faimon point out that while CarePoint has yet to be named a party, it has nonetheless become part of the litigation. (Doc. 369, at 5.) For instance, CarePoint was subpoenaed and "during the preceding months inquiries were made of counsel regarding a CarePoint corporate representative for

8

deposition, insurance coverage and other discovery requests." (*Id*.)  According to Defendants, the documents at issue withheld by CarePoint do not include "pre-litigation interviews, reports, summaries, statements, notes, or memos." (*Id*.) Instead, "the communications between counsel and CarePoint all occurred after the suit was filed and involve the mental impressions, analysis, conclusions and thought processes of counsel formed in anticipating litigation against CarePoint and in preparation for trial on the claims asserted." (*Id*.)

Plaintiff replies that the common interest doctrine is "inapplicable between a defendant-employee and third-party employer when the employer is immune from the acts of its employee." (Doc. 373, at 2 (citations omitted).)  Plaintiff states, and CarePoint acknowledges, that a "healthcare provider qualified for coverage from the Fund" under K.S.A. 40-3403(h) is immune from vicarious liability.  (*Id*.; Doc. 370, at 4.)

CarePoint contends, however, that "[P]laintiff has not established whether CarePoint is or isn't a healthcare provider qualified for coverage under the Fund." (Doc. 370, at 4.)  According to CarePoint, if it is not a healthcare provider qualified for coverage, "then even though it was not directly involved in the provision of services to D.M., CarePoint faces the potential for having vicarious liability for the alleged negligence of two defendants in this lawsuit." (*Id*.)  Plaintiff replies, however, that this burden is on CarePoint, not Plaintiff.  (Doc. 373, at 3.)

9

Regardless of who has the burden of establishing CarePoint's status as a healthcare provider qualified for coverage – and thus immune from vicarious liability – the Court agrees with CarePoint that "there was a potential for CarePoint to be sued for its independent liability in staffing decisions," and such staffing decisions would relate to Defendants Grover and Faimon. (Doc. 370, at 6.) As argued by CarePoint, this basis for liability could be "asserted even if K.S.A. 40-3403(h) would prohibit vicarious liability for the acts or conduct of other health care providers." (*Id*.) The Court is, therefore, satisfied that the common interest doctrine applies and that the attorney-client privilege/work product protection has not been waived as to the documents at issue. Plaintiff's motion (Doc. 365) is **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 365) is **DENIED** as set forth more fully herein.

IT IS SO ORDERED.

Dated this 19th day of September, 2019, at Wichita, Kansas.

                       S/ KENNETH G. GALE
                       HON. KENNETH G. GALE
                       U.S. MAGISTRATE JUDGE