## ▮▮▮ Case Narrative Review

My name is Robert Dabrow. I am a licensed medical doctor who finished Pediatric Residency training in 1987. I have been a board-certified pediatrician with the American Board of Pediatrics since 1989. I have experience in both inpatient pediatric care (1987-1992 and 2007-2018) as well as outpatient pediatric care in the office setting (1992-2006). I have been an academic pediatric physician supervising residents in both the inpatient and outpatient setting from 1987-1992 as well as 2008-2018. All my teaching experiences included supervising responsibility for medical and osteopathic residents as well as medical student education. In all my programs, I was teaching both family practice and pediatric residents as well as medical students. I have received multiple teaching awards from both the Inova Fairfax Children's Hospital (VCU College of Medicine) as well as Florida Hospital for Children in Orlando and University of Central Florida College of Medicine. In addition, I worked supplemental shifts from 2009-2011 at a community hospital emergency room in Baltimore, MD. My diverse pediatric patient care and teaching experiences covers a wide range of simple and complex problems which would make me uniquely qualified to understand the standards of care and requirements for evaluation and treatment of the acutely ill child as well as the standard of care and requirements of being a pediatric hospitalist.

I am familiar with the standards of care, expectations and requirements of a pediatric hospitalist attending in charge of residents and students in training. Furthermore, I am familiar with the standards of care, expectations and requirement of mid-level providers and emergency room physicians in similar clinical situations involving the presentation of a pediatric patient. For the two years prior to March 5, 2017 I was actively practicing as a pediatric attending physician in both the hospital and ambulatory care settings for 90% of my work week (and had administrative duties for 10% of my time). For those years I was a full time pediatric hospitalist at a children's hospital in Orlando, FL.

For the current case review I have reviewed the following records and depositions:

Emergency Room record from Wesley Woodlawn Hospital dated March 5, 2017 (Bates Numbers: 010001 – 010019)



EXHIBIT F

Emergency room record and admitting/inpatient records from Via Christi Hospital St Francis (Bates Numbers: 020001 – 021894) with an emphasis on documentation for services rendered up until the calling of a rapid response and subsequent code on the morning of March 6, 2017.

Depositions provided to me for review were from the attending physicians - Bala Bhimaverapu and Gregory Faimon; resident physicians – Connor Hartpence, Jamie Borick, and Stefanie White; PA Bridget Grover; ARNP Jennifer Chambers Daney; Tiffany Redmond RN; and medical student Samuel DuMontier. In addition I reviewed the depositions of Jennifer Knight, Nelda Appell, and Kelli Morgan.

The following is a summary of the medical records that I have reviewed. On March 5, 2015 at approximately 1800, D▆▆ M▆▆ presented to Wesley ED triage. Triage notes documented a **chief complaint of headache 2 mornings of nausea, dizzy and unbalanced for 2 days. Fever was denied.** There was no mention of sore throat but a history of throat being red was reported by the parent. Vital signs were reported as normal, without fever, but did not include a blood pressure reading. He was diagnosed as having strep throat by PA Grover and was not seen by an MD. The diagnosis appears to be based on a positive rapid strep test and a slightly red throat in a child with the above complaints. He was discharged around 19:06 with a prescription for oral amoxicillin.

Due to persistent vomiting, headache and inability to take oral medications he presented to the Via Christi ER at about 02:22 am. He was seen initially by ARNP Daney who assumed and agreed with the previous diagnosis of strep throat and noted that he had failed outpatient therapy. On arrival initial vital signs recorded that he was hypertensive (BP 124/69), bradycardic (HR 69) and had low respiratory rate (RR 16). He was given a bolus of IV fluids, anti-nausea medication (Zofran) and screening laboratories were obtained including complete blood count and electrolytes. CBC did show elevated white cell count (21.6), chemistries showed elevated glucose (189) and low $CO_2$ (21) but no evidence of dehydration by chemistries (normal BUN/Cr). Repeat strep testing was not performed. Decision was made to recommend placement in the hospital under observation status. ARNP Daney reportedly spoke with Dr. Bala (attending pediatric faculty and hospitalist) who accepted patient for admission for the diagnosis of strep throat with a plan for observation and oral antibiotics. There are no records of

this transfer of care or sign out between ARNP Daney and Dr. Bala. Dr. C Hartpence (admitting intern) saw the patient in the ED around 6 am and did a very comprehensive admission history but records that he deferred a neurologic exam. Dr. Hartpence records that "D▓▓▓ M▓▓▓ *is a previously healthy 5-year-old male who presented to the ED with nausea and vomiting. Pt was diagnosed with group A strep pharyngitis at Wesley ED at 6PM on Sunday and sent home with Amoxicillin 480 mg BID x10 days. Pt took one dose but was unable to keep it down, mother states he vomited 3 or 4 times after leaving Wesley. She was worried about him getting treatment for his strep and thought that he might be dehydrated, so she brought him to St. Francis ED. Pt's mother states that she is unsure when symptoms started because pt's sister recently had a tonsillectomy and she thinks pt was afraid that if he told his mom that his throat hurt that he would have to have surgery as well.* **Nausea and vomiting started on Friday, intermittent throughout the weekend. On Sunday, pt complained of headache, dizziness, and worsening nausea and several episodes of emesis. Denies fevers, chills, weight loss, abdominal pain, or rash.**" Dr. Hartpence wrote admit orders based on the diagnosis of strep throat and requested oral antibiotics. Admit orders included orders for vital signs every hour but there is no follow up documentation if that was intentional or an error. Dr. Hartpence reportedly reviewed the case by phone with Dr. Bala around 7:10 am but neither physician has any recollection or record of the conversation. Dr. White (senior resident) reports examining the patient around 6:15 am and signs her note at 7:22 am. She does report that patient was "*Seen by me at 0615. Per mom, he was* **nauseated, dizzy and had a headache at home which is what prompted the hospital visit. He vomited every 30 minutes to an hour after receiving the amoxicillin.** *He hasn't vomited since receiving Zofran.* **He is very sleepy this morning and mom is worried about how sleepy he is** *but she states he didn't sleep at all until getting meds in the ED around 3 AM.* **On exam he is asleep but will wake to stimuli and rub his eyes/push examiner's hand away. Uvula midline, tonsils enlarged with some erythema but no obvious purulent exudate.**"

Nursing documentation of neurologic status is variable. At 4:31 RN Whillock notes patient is alert and has a Glasgow score of 15. At 6:35 AM RN Zoglman notes he is lethargic but has none listed under neurologic symptoms. She also gives him a GCS of 15 and records no abnormality in tone with equal movement

of his upper and lower extremities. She also notes him to be "very sleepy from being up all night".

A medical student (Dumontier) saw the patient around 7am and signed a note at 0756 which was cosigned by the day intern Borick at 08:37 without changes. Dr. Borick possibly saw the patient briefly before 8am but the record is very unclear if she independently examined the patient herself. There is no documentation that Dr. Borick examined the patient herself as her note is simply an exact replication of the previously written medical student note which was also co-signed later in the day by the attending Dr Bala. There are no nursing notes that she was observed to be examining the patient. In addition, both the medical student and patient's mother could not state with certainty that Dr Borick independently examined the patient. Nurse Redburn stated that Dr Borick was "upset because she didn't wake him". What is certain is that the patient was never seen by any attending physician at any locations and had no other resident physician evaluations until about 1000 when both a rapid response and code were called. There are no recorded vital signs from 06:39 until after the code began. The patient was thought to be having seizures and was medicated, resuscitated, intubated, and transferred to PICU after an emergency CT scan. According to the chart the patient was subsequently found to have a posterior fossa/brainstem tumor with obstructive hydrocephalus and was also diagnosed with a stroke.

The inadequate and substandard medical care provided to D▓▓▓ M▓▓▓ at both Wesley and Via Christi revolve around two issues; (1) What are the requirements to correctly diagnose strep throat in a 6 year old child and (2) What is the differential diagnosis for a 6 year old child with headache, vomiting, abnormal vital signs and an abnormal neurologic exam. For the reasons discussed below, it is my opinion to a reasonable degree of medical certainty that PA Bridget Grover, Dr. Faimon, Nurse Practitioner Daney-Chambers, Dr. Hartpence, Dr. Bala, Dr. White and Dr. Borick (collectively the providers) all deviated from the standard of care.

The diagnosis of strep throat for a school age child almost always requires a history of sore throat with findings of pharyngitis. Besides history of sore throat, there might be history of fever, swollen lymph glands, rash, exudates (pus) on the tonsils, and frequently is associated with vomiting, abdominal pain or headache.

If a patient has a history of sore throat plus a number of these findings by history or exam, a rapid strep test should be considered along with confirmatory culture. It is well known that between 5-15% of school age children carry the group A streptococcal germ (the cause of strep throat) and are not actually infected. Therefore, it is never recommended to do a strep screen on a child without a supporting history and physical findings. Slightly red throat as the only clinical finding in a vomiting child who did not complain either of fever or sore throat and who had a headache, would not be enough reason to obtain a strep screen or make a diagnosis of strep throat.

The diagnosis of increased intracranial pressure (increased ICP) can be difficult in the early stages. However, it is well known that with increased ICP in a child, there can be abnormalities of cranial nerve function such as eye findings, ocular movement abnormalities, balance difficulty, and vomiting without associated findings of acute gastroenteritis. It is well known that most brain tumors in children occur in the posterior fossa or brainstem obstructing CSF flow at the narrowest portion of the anatomic pathways causing elevated ICP. The complaint of the worst headache a child ever had in a patient who never previously complained of headache and had a few days of vomiting with balance abnormalities would raise strong suspicion for increased ICP and possible brain tumor or stroke. In addition, fundamental medical school teaching to all physicians of so called "Cushing Triad" (the findings of elevated BP, bradycardia and rapid or slow irregular breathing) is considered a classic finding for elevated ICP.

For this patient, all providers had the opportunity to agree or disagree with the initial incorrect diagnosis of strep throat. The medical records show that every provider who treated this child assumed (incorrectly) and believed he had strep throat based on incomplete history taking, inadequate physical diagnosis, and inability to formulate an appropriate differential diagnosis for his various symptoms.

I note multiple concerns regarding the initial ER care at Wesley Med Center. Based on the depositions I reviewed there is a claim that triage nurse information was not available nor reviewed by the treating provider (PA Grover). This is not the usual standard of care as triage information is a necessary part of all histories

and usually included in the chief complaint. The fact that there is no blood pressure measured in a child who was hypertensive at every subsequent measurement prior to his code suggests that the child would likely have been hypertensive on arrival at Wesley. If an abnormal blood pressure had been measured with the triage information of vomiting, dizzy, headache and unbalanced, there should have been concerns for an expanded differential diagnosis to include causes of elevated ICP and changed the approach to his evaluation. Obtaining a blood Pressure measurement has been the standard of care in all health care settings for children age 4 and up for both routine and urgent visits. (blood pressure is one of the basic VITAL SIGNS) The patient never reported fever and in fact denied fever. Neither the patient nor family ever reported sore throat. They did report history of headache, being dizzy, unbalanced and nausea and vomiting. PA Grover is the only provider in both institutions who reported sore throat over 24 hours and vomiting with fever, but she does not state clearly if this is what the parent told her or not. It is likely that she assumed these complaints existed and that D▇▇▇▇ symptoms could be explained by a poorly chosen lab test without looking at the entire constellation of reported symptoms. Her diagnosis of strep pharyngitis would have been more acceptable if patient presented with acute onset of fever, headache, sore throat and had physical findings of strep throat NONE OF WHICH ARE REPORTED in her notes. (I found it troubling that her diagnosis was not even supported by Wesley's written discharge instructions provided. These instructions listed the usual criteria to accurately diagnose strep throat and even discussed how carrier state can confuse the clinical picture). I would also find fault with the Wesley ER attending (Dr. Faimon) who failed in his duty when he reviewed the chart that same evening and did not pursue independently or with PA Grover why she felt patient had strep with lack of clinical findings and based on the unusual triage history and chief complaint reported.

Both PA Grover and Dr. Faimon should have considered an alternate diagnosis, with acute elevated ICP at the top of any differential diagnosis list. The diagnosis would be based on the history reported by the patient's mother, the history recorded in the medical record and the lack of an alternate diagnosis to plausibly explain his symptoms and findings. In such a situation a reasonable and prudent physician or physician's assistant should have ordered a stat CT brain. These

scans can be done without sedation, need minimal patient cooperation, do not require an IV and would take less than 15 minutes from ordering to completion in most acute care hospital emergency departments or free-standing emergency rooms. For this patient the diagnosis could have been and should have been made at the initial medical encounter.

ARNP Chambers also made the false assumption that the patient only had a confirmed diagnosis of strep throat when he presented to Via Christi. The fact that a patient returned for a second emergency room visit with worsening symptoms and within a few hours of a prior visit always warrants additional evaluation and closer attention to their history and a more comprehensive physical exam. There was nothing recorded to suggest that a more comprehensive history and physical was obtained. She also assumed that the patient had a confirmed diagnosis which was not supported by her own limited history or physical findings. It is troubling that no repeat strep test was requested. Perhaps the original Wesley test was a false positive and a repeat negative test would have raised even more suspicions that this was not a case of strep throat. At Via Christi, the vital signs were taken on multiple occasions and they were never completely normal. The medical record even highlights in **bold type** the abnormal vital signs at each measurement. Hypertension was never addressed. Bradycardia was never addressed. The labs obtained by ARNP Chambers had significant abnormalities that were not explained by the diagnosis of strep throat and were just felt to be "reactive" by other providers. There were no abnormal physical findings supporting the diagnosis of strep pharyngitis. There were no findings of dehydration by exam or labs despite multiple providers comments about possible dehydration and need for IV fluids. There should have been a great concern by nursing, ARNP and physician staff for the alertness or more specifically the lack of alertness of this patient noted by multiple examining staff to be excessively sleepy and poorly arousable. A concern for an alternate diagnosis to strep throat such as an intracranial process with elevated ICP should have been raised immediately after the initial Via Christi exam was completed by the ARNP and certainly after the initial MD exam by the resident MD Dr. Hartpence. As already noted, "In such a situation a reasonable and prudent physician or physician's assistant (or ARNP) should have ordered a stat CT brain."

The evaluation by the intern (Dr Hartpence) reads like a case study of someone with increased ICP. Patient had 3 days of progressive symptoms including headache, dizziness and worsening emesis. There were no reports suggesting acute infectious process such as fever, sore throat, rash, abdominal pain or diarrhea. The ENT exam is essentially normal, and the patient has not yet been treated for presumed strep throat. The vital signs again are highlighted in bold type in the hospital chart as abnormal (the classic Cushing Triad) and all medical providers should have been suspicious of these abnormalities representing something more severe and complex than untreated strep throat. The abnormal labs would not usually be expected in a case of simple strep. Vomiting would cause hypoglycemia usually, not hyperglycemia. Vomiting with dehydration to cause symptoms would also have elevated BUN/Cr not normal results. Low CO2 representing metabolic acidosis is not consistent with strep throat. Elevated WBC count in a non-febrile patient without other concerns for invasive infection should have raised suspicion that other medical causes should be considered. There is never a reproducible or fully documented neurologic exam including a review of pupillary and eye movement findings which would have been very helpful to evaluate for ICP issues.

It is unfortunate that the senior resident on duty (Dr. White) did not follow up on her own observations of excessive sleepiness and lethargy in a patient with intractable vomiting and with headache. Her description of D[redacted] responses at her exam reads more like grimace and withdrawal responses of someone with depressed sensorium from intracranial pathology rather than a sleepy child. As she cosigned the intern note without additional or alternate differential diagnosis or plans of care (despite her own reported observations), it is clear she did not consider increased ICP at all as a concern. This was another missed opportunity to intervene and more thoroughly evaluate the patient for an intracranial process. A third year family medicine resident near the end of her training should have done a more detailed evaluation, created a more complete differential diagnosis to include concerns for intracranial processes, and questioned the prior reports or raised concerns to the attending physician. This did not take place.

The family medicine intern Dr. Borick was the last resident physician who may have examined the patient prior to the code. I have previously expressed doubt that she ever independently examined the patient. However, if she did examine

the patient it was extremely limited and a very inadequate exam of an unresponsive child. Her brief note simply repeats many of the previous errors already noted in this report. There was an incorrect assumption that the patient had strep throat and no other differential diagnosis considered. There was ignorance of causes and explanations for various abnormal vital signs (highlighted in bold in the EMR) abnormal labs (also highlighted in bold) a complete lack of a neurologic exam, and a complete lack of ENT exam to support the reported admission diagnosis. Unfortunately for the patient, this was the very last missed opportunity to have ordered an emergency CT scan prior to the code. Had Dr Borick done an appropriate and more complete exam or even reviewed the history in the medical record, she would have recognized the need to escalate his care by initiating immediate contact with a pediatric attending or pediatric specialist to review the patient's findings and change the plan of care from "plan to discharge later today". Unfortunately for the patient, the same can be stated regarding the evaluations and plans of care by Drs. Hartpence, White, and the attending Dr. Bala.

There are no comments or documentation by the three residents or advanced practitioners or any nursing staff of Dr. Bala having any specific questions or concerns about the patient or questions regarding plan of care or when he planned to examine the patient. It is not evident that Dr. Bala had formulated any alternate diagnosis for this patient after 2 independent handoffs from both ARNP Chambers and Dr. Hartpence. It is the responsibility of any admitting physician and especially for a teaching physician to have complete information at all handoffs. This would include a brief but thorough history with awareness of vital signs and knowing all appropriate physical findings and a review of any abnormal labs. The attending should then formulate a careful differential diagnosis. That did not take place for this patient as there was no differential diagnosis besides the incorrect one of strep throat.

Dr. Bala failed in his responsibility to recognize that this patient had more complexity than just "failed outpatient therapy for strep throat". Dr. Bala was the pediatric hospitalist attending and the most experienced pediatric provider who had two different opportunities to obtain transfer of care information. He was ultimately the physician responsible for the care of this patient. He failed to obtain a comprehensive history from the ARNP and residents, he failed to

respond to abnormal findings that would have been provided in 2 different handoffs and failed to formulate an appropriate differential diagnosis for the patient. Basic competency requirements of the American Board of Pediatrics for Infectious Diseases include the basic knowledge and understanding of Group A streptococcal infections. There are specific competencies under Neurology and Neurologic Disorders that list signs and symptoms of neurologic dysfunction including headache (differentiation, evaluation and treatment), altered level of consciousness and increased intracranial pressure. Dr. Bala failed to meet the basic competencies for these medical conditions which is required training in all pediatric residency programs and necessary knowledge for pediatric board certification.

In most institutions, it is customary for new patients to be seen first (usually on arrival) by an attending physician if they had not previously been evaluated by another attending physician. Dr. Bala should have seen the patient early in the morning of admission if he took call from home, or shortly after arrival to the pediatric floor but did not see D▮▮▮ until a code was called around 10am.

For a pediatric hospitalist attending, especially a teaching attending, there are no simple admissions. It is the responsibility of an attending MD to consider that every child admitted to a hospital may have a potentially life-threatening problem with some reasonable probability and look at the whole picture. This did not take place here. At multiple intervention points along the care plan, an urgent or stat CT should have been requested which would have shown obstructive hydrocephalus, mass lesion and would have allowed immediate intervention by an experienced ICU staff for treatment of increased ICP in a controlled manner. This would most likely have prevented the cascade of life threating events that manifested around 1000 with the code situation.

All staff involved in the care of D▮▮▮ M▮▮▮ failed to consider that strep throat is a self-limiting infection that should not cause such extreme symptoms. All staff involved failed to consider any alternate diagnosis for the history provided by his family to multiple providers in 2 different institutions. There was no history of sore throat, fever or any "classic" findings of strep pharyngitis in a school age child. There was oversight in ignoring the most basic findings of repeatedly abnormal vital signs, unexplained lab abnormalities and failure to consider that

his repeatedly reported and observed symptoms of vomiting, headache, dizziness, unbalanced, and his presumed sleepiness and pushing away examiners were findings of an someone with elevated intracranial pressure. Finally, it is hard to understand how someone with such significant history, with abnormal neurologic findings, lack of supportive physical findings, abnormal vital signs and abnormal labs could be seen in 2 different hospital emergency departments and get admitted to a teaching facility without ever seeing an attending MD prior to a code situation.

These opinions are held to a reasonable degree of medical certainty. Furthermore, I reserved the right to revise or modify my opinions based upon receipt of additional information

Robert Dabrow MD FAAP July 22, 2019

*[signature: Robert Dabrow MD]*

11