IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY, KANSAS DIVISION

| | |
|---|---|
| D.M. a minor, by and through his next friend and natural guardian, Kelli Morgan,<br><br>      Plaintiff,<br><br>vs.<br><br>Wesley Medical Center LLC d/b/a Wesley Medical Center-Woodlawn; Wesley-Woodlawn Campus; Bridget Grover, PA-C; Dr. Gregory Faimon; Lisa Judd, RN; Via Christi Health Systems d/b/a Via Christi-St. Francis; Jennifer Chambers-Daney, ARNP; Dr. Bala Bhaskar Reddy Bhimavarapu; Dr. Connor Hartpence; Dr. Stefanie White; Dr. Jamie Borick, and Aaron Kent, RN, CEP America-KS, LLC<br><br>      Defendants. | Case No. 2018-CV-2158-KHV-KGG |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES
AGAINST DR. BALA BHASKAR REDDY BHIMAVARAPU M.D.**

**COMES NOW** Defendant Bala Bhaskar Reddy Bhimavarapu, M.D. and respectfully submits this memorandum in support of his motion for summary judgment pursuant to Fed. R. Civ. P. 56.

STATEMENT OF MATERIAL FACTS
AS TO WHICH NO GENUINE ISSUE EXISTS

1. Plaintiff's suit alleges medical malpractice for care received on March 5 and 6, 2017. (Pretrial Order, 3. FACTUAL CONTENTIONS, Exhibit A, p. 7)

2. On March 5, 2017, plaintiff's mother carried him into the Wesley Medical Center emergency room at 6:20 p.m. (Id., 3a. Contentions of Plaintiff, Exhibit A, p. 9)

1

3. Plaintiff had a positive strep screen test at Wesley. (Ms. Grover depo., Exhibit B, p. 93, l. 20-23)

4. Plaintiff was diagnosed at Wesley as having strep throat and given a prescription for antibiotics. (Pretrial Order, 3a. Contentions of Plaintiff, Exhibit A, p. 9)

5. The next morning, March 6 at 2:15 a.m., plaintiff's mother presented him to the Via Christi St. Francis emergency room. (Id., p. 11)

6. At 4:48 a.m., plaintiff was seen by defendant Chambers-Daney. (Id.)

7. Ms. Chambers-Daney admitted plaintiff for observation at 5:04 a.m. after consulting with attending physician Dr. Bala. (Id.)

8. Defendant Hartpence, a resident, saw plaintiff at 5:18 a.m. and reported to Dr. Bala: "On Sunday, pt [patient] complained of headache, dizziness and worsening nausea and several episodes of emesis." (Id., p. 11-12)

9. There is no contention or evidence to support that before plaintiff's code Dr. Bala i) had any conversation with plaintiff's parents, ii) was informed of any of their comments beyond what is in the medical records, iii) charted as to plaintiff or iv) saw plaintiff. (Id., p. 12 and p. 1-52)

10. Dr. Bala's understanding as to plaintiff was that when he was admitted he was tired, was vomiting, was dehydrated, got fluids, was able to rest, was no longer vomiting and was sleeping. (Dr. Bala depo., Exhibit C, p. 36, l. 25-p. 37, l. 1-6)

11. Dr. Bala testified that seeing two providers in one day and vomiting after an antibiotic was not uncommon for pediatric patients and was very consistent with strep throat. (Id., p. 41, l. 23-25-p. 42, l. 1-14)

12. Plaintiff coded at 10 a.m. on March 6, 2017. (Pretrial Order, 3.a. Contentions of Plaintiff, Exhibit A, p. 12)

13. There are no specified allegations of wanton conduct against Dr. Bala, individually. (Id., p. 1-52; Amended Complaint, Exhibit D, p. 35-6).

14. There are generic allegations, per Count IV of the Amended Complaint and as adopted into plaintiff's contentions in the Pretrial Order, that the defendants, generally: i) were aware of catastrophic consequences of alleged failures to act in manners that would have been proper for plaintiff's care, ii) intentionally attempted to conceal misconduct by failing to chart certain things, and iv) were financially motivated as to their wanton failures and intentional concealments. (Id.)

15. Dr. Bala testified he cannot bill for care without actually seeing the patient. (Dr. Bala depo., Exhibit C, p. 64, l. 4-14).

16. There are no specific references to willful, malicious, fraudulent, or wanton conduct by Dr. Bala in plaintiff's experts' depositions. (Dr. Dabrow depo., Exhibit E, word index; Dr. LePichon depo., Exhibit F, word index) [For efficiency, since these depositions are very voluminous, the word indices are provided to verify the lack of such wording occurring therein, though the depositions in their entirety can be provided for verification.]

17. There are no specific references to willful, malicious, fraudulent, or wanton conduct by Dr. Bala in the reports of plaintiff's two experts who criticize him. (Dr. Dabrow report, Exhibit G, p. 1-11; Dr. LePichon report, Exhibit H, p. 1-19)

18. There are no specific references to willful, malicious, fraudulent, or wanton conduct by Dr. Bala in Dr. Bala's deposition. (Dr. Bala depo., Exhibit C, word index)

3

19. Plaintiff's expert Dr. LePichon wrote: "It follows that all of the clinicians, starting with Mrs. Daney and ending with Dr. Bala Bhimavarapu (who was ultimately the physician in charge), failed in their ability to recognize the characteristic signs of increased intracranial pressure." (Dr. LePichon report, Exhibit H, p. 12)

20. Plaintiff's expert Dr. Dabrow wrote: "For this patient, all providers had the opportunity to agree or disagree with the initial incorrect diagnosis of strep throat. The medical records show that every provider who treated this child assumed (incorrectly) and believed he had strep throat based on incomplete history taking, inadequate physical diagnosis, and inability to formulate an appropriate differential diagnosis for his various symptoms." (Dr. Dabrow report, Exhibit G, p. 5)

21. Plaintiff's expert Dr. LePichon testified he could not say plaintiff did not have strep throat. (Dr. LePichon depo., Exhibit F, p. 117, l. 19-21).

22. Plaintiff's expert Dr. Dabrow testified strep throat, in fact, could have been on plaintiff's differential diagnosis. (Dr. Dabrow depo., Exhibit E, p. 33, l. 4-10)

23. Plaintiff's allegations specific to Dr. Bala are:

In addition to the aforementioned, Dr. Bala deviated from the standard of care and was negligent in the following respects:

1. Failing to consider the complexity of D.M.'s condition;
2. Failing to obtain a comprehenisve history of D.M.'s symptoms from Daney;
3. Failing to obtain a comprehensive history of D.M.'s symptoms and his physical and neurological condition from Residents Hartpence, White & Borick;
4. Failing to personally examine D.M.;

4

5. Failing to ask additional questions regarding D.M.'s symptoms and condition including his headache, dizziness, nausea and vomiting; and

6. Failing to ask questions about D.M.'s prior Wesley Medical Center-Woodlawn admission and his complaints leading to that admission.

(Pretrial Order, Legal Claims of Plaintiff, Exhibit A, p. 24-25 and p. 27)

24. Plaintiff describes proceeding to trial with respect to claims for punitive damages against all defendants. (Id., p. 28)

## ARGUMENTS AND AUTHORITIES

Per this Court's instruction:

> Under Rule 56, defendant may file a motion for summary judgment asserting lack of evidence to support a claim for punitive damages. See Fed. R. Civ. P. 56. To overcome such a motion, plaintiff must present evidence which demonstrates a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In other words, plaintiff must present evidence which is sufficient to support his claim for punitive damages. The trial court must review the evidence in the light most favorable to plaintiff and determine if a reasonable jury could find by clear and convincing evidence that defendant acted with willful or wanton conduct, fraud or malice. See *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010); *Ducharme v. Bd. of County Comm'rs*, No. 09-2338-JTM, 2011 U.S. Dist. LEXIS 58999, 2011 WL 2173684, at *9 (D. Kan. June 2, 2011); *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp.2d 1281, 1303 n.14 (D. Kan. 2009).

*D.M. v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV, 2019 U.S. Dist. LEXIS 98543, at *19 (D. Kan. June 12, 2019):

> Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986) (quoting Fed. R. Civ. P. 1). If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those

5

dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935, 150 Fed. Appx. 819, 821 (10th Cir. 2005).

Punitive damages are based on a showing of willful, malicious, fraudulent, or wanton conduct. See K.S.A. 60-3702(c). "Punitive damages are imposed as a way to punish the malicious, wanton, vindictive, or willful acts of others and to deter others from committing similar wrongs. They are not allowed because of any special merit to the injured party's case or because of the tragic facts surrounding an unfortunate occurrence." *Ducharme v. Bd. of County Comm'rs*, No. 09-2338-JTM, 2011 U.S. Dist. LEXIS 58999, 2011 WL 2173684, at *24 (D. Kan. June 2, 2011).

As there is no evidence to support that Dr. Bala was financially motivated to act to the disregard of plaintiff (SOF 15, Dr. Bala only got paid if he saw plaintiff, which he did not do pre-code) or concealed anything as to charting (SOF 9, Dr. Bala did not chart until after the code), this argument will focus on the (conclusory) claim of wanton conduct.

The Kansas Supreme Court has defined "wanton conduct" as:

> Wanton conduct is an act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act. A wanton act is more than ordinary negligence but less than a willful act. For an act to be wanton, the actor must realize the imminence of danger and recklessly disregard and be indifferent to the consequences of his or her act. Wantonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence.
>
> In order for a plaintiff to prove wanton conduct, it is not necessary that the plaintiff's evidence establish a formal and direct intention to injure any particular person. It is sufficient if the defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless.
>
> Recklessness is a stronger term than negligence. To be reckless, conduct must be such as to show disregard of or indifference to consequences, under circumstances involving danger to life or safety of others. The keys to a finding of wantonness are the knowledge of a dangerous condition and indifference to the consequences.

*P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp.2d 1281, 1303 (D. Kan. 2009) (quoting *Reeves v. Carlson*, 266 Kan. 310, 313-14, 969 P.2d 252, 256 (1998) (citations omitted)).

"Punitive damages may not be assessed against "one who acts under innocent mistake in engaging in conduct that nevertheless constitutes a tort."' *Rios v. Bigler*, 847 F. Supp. 1538, 1548 (D. Kan. 1994) (quoting *Iola State Bank v. Bolan*, 235 Kan. 175, 192, 679 P.2d 720, 734 (1984)). Yet, that is exactly plaintiff's claim – Dr. Bala was mistaken in his conclusion that plaintiff did not have a serious condition.

Plaintiff's litany of "failing to" claims against Dr. Bala (SOF 23) is to the effect that he should have done more, and that had he, he then would have appreciated the seriousness of plaintiff's condition. The claims are not to the effect that Dr. Bala knew of the seriousness of the condition and disregarded it. Second, and in accord with those claims, plaintiff's experts specifically state that the providers "failed in their ability to recognize the characteristic signs of increased intracranial pressure" (SOF 19) and the providers "assumed (incorrectly) and believed he had strep throat." (SOF 20) Plaintiff's claims and experts' statements against Dr. Bala both run contrary to him having a "realization of the imminence of danger" to plaintiff.

This case is similar to *Rios v. Bigler*, 847 F. Supp. 1538, 1549 (D. Kan. 1994), where the plaintiff did not show that the physicians had knowledge of the imminence of danger, and summary judgment was granted in defendants' favor. In *Rios*, the plaintiff sought punitive damages against her doctors based on an alleged failure to act in her best interests with knowledge that their failure to take corrective action could have disastrous consequences. 847 F. Supp. at 1548. Specifically, plaintiff argued that defendants were indifferent to her complaints, and they recklessly misdiagnosed her condition. Id. The Court found the plaintiff did not meet her burden in showing the doctors' conduct was wanton because the plaintiff did not show that the doctors were aware

7

that the failure to take actions that they did not take posed a serious threat to the health of plaintiff. Id. The Court held plaintiff "has only shown that they [doctors] took certain actions that may or may not have been negligent." Id. The facts did not establish that the "mental attitude" of the physicians approached wantonness. Id. at 1549. The Court found no evidence to support that the doctors knew that they were unable to diagnose plaintiff's condition or that she was presenting with symptoms absolutely indicative of reflex sympathetic dystrophy [the condition she ultimately had] and that the doctors refrained from acting. Id. The evidence showed only that the doctors were treating the plaintiff and actively attempting to diagnose her condition. Id.

This case is also like *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp.2d 1281, 1303 (D. Kan. 2009) where the Court found plaintiffs' evidence did not support their claims of wanton conduct, and summary judgment was granted as to the claims for punitive damages. In *P.S. v. Farm, Inc.*, the plaintiffs alleged the defendants acted wantonly by not performing their own in-depth screening exam or assessment, by placing plaintiffs with a family despite the history of complaints and concerns about the family's parenting and supervision, and by failing to conduct enough visits to the home with their inexperienced employees. 658 F. Supp. 2d at 1303. The Court found the plaintiffs' evidence "supports a finding of negligence, but nothing more." Id. at 1304. "At most, plaintiffs' evidence shows that TFI [defendants] should have appreciated a risk of abuse from various signs…but there is no evidence that TFI [defendants] realized and then disregarded an imminent danger of sexual abuse in Bartram [the family's home]." Id. "Moreover, in the absences of any evidence that anyone actually realized that abuse was likely taking place, plaintiffs cannot show that there was an obvious risk so great as to make it highly likely that abuse would result." Id.

8

This case is different from *Holt v. Wesley Med. Ctr.*, No. 00-1318-JAR, 2004 U.S. Dist. LEXIS 13799, at *21-29 (D. Kan. July 19, 2004) where plaintiffs had sufficient evidence to support claims for punitive damages. In *Holt*, the plaintiffs showed facts and circumstances that could establish the physician's requisite knowledge and awareness that injury or death to the plaintiffs were likely to result from the physician's failure to act. LEXIS 13814 at *26-27. Specifically, facts showed the physician knew that the patient was a VBAC (Vaginal Birth After Cesarean) patient; he knew (and testified) that a VBAC case has "a higher risk" of complication, including uterine rupture and death; the patient's first baby was large and had been delivered by c-section due to failure to progress; the patient was admitted for induction and had been in labor for 24 hours; and the physician had seen the patient and reviewed a heart monitor strip showing episodes of decelerations. Id. at *26-29. Ultimately, the physician acknowledged his consciousness of impending danger or a dangerous condition could be shown circumstantially. Id.

Here, the plaintiff has not shown that Dr. Bala's "mental attitude" rises to the level of wanton conduct. Like the facts in *Rios*, the evidence does not support that Dr. Bala knew plaintiff's presentation was indicative of a condition other than strep throat - which had, in fact, been diagnosed at the Wesley ER from a positive strep test. (SOF 3 and 4) The evidence shows merely that Dr. Bala was treating the plaintiff in coordination with the other healthcare providers based on his understanding that the plaintiff was tired upon admission, was vomiting, was dehydrated, got fluids, was able to rest, was no longer vomiting and was sleeping. (SOF 10) Unlike the facts in *Holt*, Dr. Bala did not know plaintiff had any condition giving rise to a higher risk of complication.[1] Further, no evidence supports a finding that Dr. Bala was conscious of the

---

[1] Plaintiff's mother has testified she advised various medical providers of symptomatology far more ominous than is shown in the medical records. True or untrue, Dr. Bala had no discussions with plaintiff's parents or saw plaintiff pre-code. (SOF 9) What was relayed to Dr. Bala pre-code was no more/less than that in the medical records.

9

impending danger or that a dangerous condition existed to which he should have been aware. Dr. Bala testified that plaintiff's condition and presentation of vomiting after an antibiotic and seeing two providers in one day was not uncommon for pediatric patients. (SOF 11) He explained that it was all very consistent with strep throat. (SOF 11)

A jury may determine Dr. Bala was negligent for "failing to" do various things that would have led to the discovery of a more serious condition.  A jury may determine Dr. Bala was negligent because he "failed … to recognize the characteristic signs of increased intracranial pressure" and/or that he was negligent because he "believed [plaintiff] had strep throat" and not a more serious condition.  But, no reasonable jury could find Dr. Bala realized plaintiff's condition to be serious and then acted in disregard to that.

## CONCLUSION

In a light most favorable to plaintiff, plaintiff has failed to present by clear and convincing evidence that Dr. Bala acted wantonly. No reasonable jury could conclude that Dr. Bala's conduct was anything more than ordinary negligence. Therefore, Dr. Bala requests summary judgment on plaintiff's claims for punitive damages against him.

Respectfully submitted,

__/s/Don D. Gribble, II_____
Don D. Gribble, II #12163
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: gribble@hitefanning.com
*Attorneys for Defendant Dr. Bala Bhaskar Reddy Bhimavarapu*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of May, 2020, I electronically filed the foregoing Memorandum with the clerk of the court by using CM/ECF system which will send a notice of electronic filing to the following:

Daniel B. Giroux
Dugan & Giroux Law, Inc.
940 N. Tyler Road, Suite 206
Wichita, KS  67212
dan@dgwichitalaw.com

Stephen Torline
Michael J. Kuckelman
Benjamin T. Friesen
Kuckleman Torline Kirkland
10740 Nall, Suite 250
Overland Park, KS  66211
storline@ktk-law.com
mkuckleman@ktk-law.com
bfriesen@ktk-law.com
*Attorneys for Plaintiff*

Tracy A. Cole
Gilliland Green, LLC
20 West 2nd, 2nd Floor
PO Box 2977
Hutchinson, KS  67504
*Attorney for Defendants Bridget Grover, PA-C
and Dr. Gregory Faimon*

Steven C. Day
Chris S. Cole
Woodard, Hernandez, Roth & Day, LLC
245 North Waco, Suite 260
PO Box 127
Wichita, KS  67201
*Attorneys for Defendants Stefanie White, MD,
Connor Hartpence, MD and Dr. Jamie Borick*

Michelle Watson
G. Andrew Marino
Gibson Watson Marino, LLC
301 North Main, Suite 1300

11

Wichita, KS  67202
*Attorneys for Defendants*
*Wesley Medical Center, LLC d/b/a*
*Wesley Medical Center – Woodlawn,*
*Welsey- Woodlawn Campus and Lisa*
*Judd, RN*

Gregory S. Young
Hinkle Law Firm LLC
1617 N. Waterfront Parkway, Suite 400
Wichita, KS  67206
*Attorneys for Defendant Jennifer*
*Chambers-Daney, APRN*

David S. Wooding
Samantha M. Woods
Marcia A. Wood
Martin, Pringle, Oliver, Wallace & Bauer, LLP
100 N. Broadway, Suite 500
Wichita, KS  67202
*Attorneys for Defendant Via Christi Hospitals*
*Wichita, Inc. and Aaron Kent, RN*

Dustin J. Denning
Clark, Mize & Linville, Chtd.
129 S. Eighth
PO Box 380
Salina, KS  67402
djdenning@cml-law.com
*Attorneys for Defendant CEP America-KS, LLC*


      /s/Don D. Gribble, II_____
      Don D. Gribble, II