## COUNT IV – PUNITIVE DAMAGES

201.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth and realleged herein.

202.   At the time of the misconduct alleged in this Complaint, it was certain that catastrophic harm would result to D.M. if Defendants did not follow the required standard of care.

203.   Although Defendants were acutely aware of the catastrophic consequences of their failures and certainty that the failures would result in permanent harm to D.M, Defendants still failed to conduct a neurological examination, failed to establish a differential diagnoses, failed to administer a CT scan of D.M.'s head, failed to monitor D.M., failed to timely assess and treat D.M., and failed to provide health care within the accepted standard of care.

204.   Defendant Wesley willfully and wantonly failed to follow its own policies and procedures for the essential screening of abnormal neurological presentations in its emergency room.

205.   Defendant Wesley authorized the use of mid-level practitioners to treat and evaluate patients who present to its emergency room.

206.   By failing to chart or note D.M.'s full presentation and history, Defendants intentionally attempted to conceal the misconduct alleged in this Complaint.

207.   By refusing to promptly release D.M.'s full medical files to D.M.'s representatives upon HIPAA compliant requests, Defendants intentionally attempted to conceal the misconduct alleged in this Complaint.

208.   Defendants' intentional concealments and wanton failures were financially motivated.

209.   Defendants put their own interests ahead of D.M.'s physical, cognitive and emotional health.

210.   Defendant Grover's attitude toward her profession, her job, her patients, and her previous adjudication of fraud in connection with her attempt to renew her medical license is an open

DEFENDANT'S EXHIBIT D

display of and explanation for her wanton and willful failures in harming D.M.

211. Defendant Wesley and Defendant Grover's co-workers acted with wanton and willful disregard for D.M.'s health by ratifying Defendant Grover's treatment of D.M. despite their awareness of her inadequate approach to patient care.

212. Defendant Via Christi willfully and wantonly failed to follow its own policies and procedures for the essential screening of abnormal neurological presentations in its emergency room.

213. Defendant Via Christi authorized the use of mid-level practitioners to treat and evaluate patients who present to its emergency room.

214. Defendant Via Christi, Defendant CEP, and Defendant Daney's co-workers acted with wanton and willful disregard for D.M.'s health by ratifying Defendant Daney's treatment of D.M. despite their awareness of her inadequate approach to patient care.

215. Defendant Wesley authorized and ratified the conduct of the Wesley health care providers who caused catastrophic injury to D.M.

216. Defendant Via Christi authorized and ratified the conduct of the Via Christi health care providers who caused catastrophic injury to D.M.

217. Defendant CEP authorized and ratified the conduct of Defendant Daney who caused catastrophic injury to D.M.

218. Upon information and belief, Defendants' financial condition is such that they can withstand substantial punitive damages.

219. Defendants' acts and failures were wanton, willful, outrageous or in reckless disregard for the consequences such that D.M. is entitled to punitive damages in an amount that will punish Defendants, protect similar patients from like conduct, and deter Defendants and others from like conduct.

220. That in accordance with the Seventh Amendment, a jury be allowed to determine the

{00542027}                                        36