# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D.M., a minor by and through his next friend and natural guardian, KELLI MORGAN, ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION |
| v. ) ) | No. 18-2158-KHV |
| WESLEY MEDICAL CENTER, LLC d/b/a WESLEY MEDICAL CENTER-WOODLAWN, et al., ) ) ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM AND ORDER

On September 11, 2018, D.M., a minor by and through his next friend, Kelli Morgan, filed an amended complaint against Wesley Medical Center, LLC d/b/a Wesley Medical Center-Woodlawn, Wesley-Woodlawn Campus, Lisa Judd, RN ("the Wesley Defendants"), Via Christi Hospitals Wichita, Inc. d/b/a Via Christi-St. Francis, Aaron Kent, RN ("the Via Christi Defendants"), Bridget Grover, PA-C, Dr. Gregory Faimon, Jennifer Chambers-Daney, ARNP, Dr. Bala Bhaskar Reddy Bhimavarapu, CEP America-KS LLC, Dr. Connor Hartpence, Dr. Stefanie White and Dr. Jamie Borick, alleging that defendants' medical malpractice caused his paralysis, neurological damage and other permanent injuries. First Amended Complaint (Doc. #121); see Pretrial Order (Doc. #435) filed May 4, 2020. This matter is before the Court on the Joint Motion For Approval Of Settlement And Motion For Dismissal With Prejudice As To Settling Defendants (Doc. #452), which plaintiff, the Wesley Defendants and the Via Christi Defendants filed on May 26, 2020. Pursuant to Kan. Stat. Ann. § 40-3410 and § 7-121b, the Court sets the motion for a hearing.

**Factual and Procedural Background**

Plaintiff alleges that around March 3, 2017, he began suffering dizziness, nausea, headache, vomiting and lethargy.  See Pretrial Order (Doc. #435).  On March 6, 2017, after defendants had examined him multiple times, plaintiff suffered a catastrophic stroke which left him with right-side paralysis, neurological damage and other permanent impairments.  After the stroke, a CT scan revealed a brainstem tumor and significant obstructive hydrocephalus.  Pathology testing later confirmed that plaintiff had a treatable form of medulloblastoma.

On September 11, 2018, plaintiff, by and through Kelli Morgan, filed a First Amended Complaint (Doc. #121) against defendants.  See Pretrial Order (Doc. #435).  On June 23, 2020, plaintiff, the Wesley Defendants and the Via Christi Defendants provided an unredacted copy of their proposed settlement.[1]  See Settlement, Release And Confidentiality Agreement (Doc. #471-1).  Pursuant to the agreement, plaintiff releases from liability the Wesley Defendants, the Via Christi Defendants, Health Care Indemnity, Inc., the Ascension Health Alliance Self-Insured Trust and the Kansas Health Care Stabilization Fund and its Board of Governors ("the Fund"), along with all related entities.[2]  Id. at 1.  In particular, the settlement releases these entities from all claims which arise out of the medical treatment of plaintiff in March of 2017, or which "in any way involve the diagnosis, care and treatment, or the failure to diagnose or treat" him, whether "presently known or unknown, asserted or unasserted, present or future, direct or indirect."  Id.

---

[1] The settlement agreement which the parties initially provided contained several redactions.  See Joint Motion For Approval Of Settlement And Motion For Dismissal With Prejudice As To Settling Defendants (Doc. #452); see also Order To Show Cause (Doc. #469) filed June 18, 2020.

[2] As best the Court can ascertain, Health Care Indemnity, Inc. is the insurer for the Wesley Defendants, and Ascension Health Alliance Self-Insured Trust is the insurer for the Via Christi Defendants.  The Fund applies to both sets of defendants.

at 2. This release "is intended to cover any and all prior, current or future injuries, damages or losses, whether known or unknown to the parties," which "may later develop, or be discovered in connection with" defendants' treatment of plaintiff, including but not limited to wrongful death or loss of consortium claims. Id.

In exchange for this release, on behalf of the Wesley Defendants, Health Care Indemnity, Inc. and the Fund will pay a total of $400,000. Specifically, Health Care Indemnity, Inc. will pay $200,000 to Dugan & Giroux Law, Inc., which represents plaintiff.[3] Id. at 3. For plaintiff's attorneys' fees, expenses[4] and plaintiff's known and unknown medical liens, the Fund will pay $200,000 to Dugan & Giroux Law. Id. The parties are currently aware of three medical liens, which will require plaintiff to pay a total of $163,148.94. Id. at 4.

On behalf of the Via Christi Defendants, Ascension Health Alliance Self-Insured Trust and the Fund will pay a total of $500,000. Id. at 3. Specifically, for plaintiff's attorneys' fees, expenses and the medical liens described above, Ascension Health Alliance Self-Insured Trust and the Fund will pay $200,000 and $51,206.64, respectively, to Dugan & Giroux Law. Id. Moreover, the Fund

---

[3] The proposed settlement does not clarify whether this $200,000 stays with Dugan & Giroux Law or goes to plaintiff. This is particularly confusing given the fact that the next item specifies that Dugan & Giroux Law will receive $200,000 for "payment of attorney's fees and expenses." Settlement, Release And Confidentiality Agreement (Doc. #471-1) at 3. In short, the proposed agreement leaves unclear who ultimately receives this $200,000.

[4] The parties do not specify an amount for plaintiff's attorney fees and expenses. In support of the present motion, plaintiff attaches a separate brief which asserts that "a 40% fee is usual and customary for medical malpractice injury cases." Exhibit B (Doc. #452-2) at 4. Because they do not elaborate or proffer a specific dollar amount, the Court is unclear how much plaintiff's attorneys will recover.

will pay $248,793.36 to Kelli and Kevin Morgan as trustees for initial funding of the D.M. Special Needs Trust.[5]  Id.

## Analysis

Pursuant to Kan. Stat. Ann. § 40-3410 and § 7-121b, the proposed settlement and its allocation of attorneys' fees require court approval.

The Fund "provides excess medical malpractice coverage to Kansas health care providers who qualify under the Health Care Provider Insurance Availability Act." Whittington v. Newman Reg'l Health Ctr., No. 14-4008-DDC, 2015 WL 224814, at *1 (D. Kan. Jan. 15, 2015) (citations omitted).  When a health care provider who has Fund coverage is sued for medical malpractice in Kansas, "the primary responsibility for defending the health care provider rests with the insurance carrier."  Id. (citations omitted).  If the insurance carrier believes that the provider's liability exceeds the applicable policy limits, however, the carrier may "tender the policy limits to the Fund, and the Fund is then responsible for determining whether to mount a defense or settle the malpractice claim."  Id. (citations omitted).  If the Fund decides to settle, the settlement requires approval by the court in which the malpractice action is pending.  Id.  (to trigger statutory court approval provision, settlement must at least involve decision by Fund's board of governors to pay money from Fund itself); see Sanderford v. Malley, No. 14-2165-RDR-KGS, 2015 WL 1423157, at *3 (D. Kan. Mar. 27, 2015) (because settlement does not involve decision by board of governors to pay money from Fund, settlement does not require court approval).  If the settling parties do not show that the approval provision applies, the Court lacks jurisdiction to approve the settlement.

---

[5] The settlement itself does not define the "D.M. Special Needs Trust," but it is apparently "a special needs trust for the benefit of [plaintiff's] care, treatment and continued medical needs."  Joint Motion For Approval Of Settlement And Motion For Dismissal With Prejudice As To Settling Defendants (Doc. #452) at 3.

Whittington, 2015 WL 224814, at *2 (court without jurisdiction to offer advisory opinion); see Sanderford, 2015 WL 1423157, at *3.

> If the court approval provision applies, Section 40-3410 requires the following procedures:
>
> (a) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider . . . for approval of the agreement between the claimant and the board of governors.
>
> (b) The court shall set such petition for hearing as soon as the court's calendar permits, and notice of the time, date and place of hearing shall be given to the claimant, the health care provider or inactive health care provider, and to the board of governors.
>
> (c) At such hearing the court shall approve the proposed settlement if the court finds it to be valid, just and equitable.

Kan. Stat. Ann. § 40-3410 (if claimant and board of governors agree on settlement amount, designated procedures must follow).[6]

Here, because the proposed settlement agreement requires payment from the Fund itself, the parties must obtain the Court's approval. See Kan. Stat. Ann. § 40-3410; see also Whittington, 2015 WL 224814, at *2. Accordingly, pursuant to Section 40-3410(b), the Court sets a hearing for August 6, 2020 at 11:00 A.M. In preparation for the hearing, the parties must submit a supplement brief by July 27, 2020 which clarifies how the proposed agreement allocates the settlement funds. In particular, the parties must (1) explain who ultimately receives the $200,000 which Health Care Indemnity, Inc. must pay to Dugan & Giroux Law on behalf of the Wesley Defendants, (2) specify the precise amount that plaintiff's attorneys request for fees and expenses and (3) provide a full itemized breakdown which shows plaintiff's ultimate recovery after applicable reductions, including attorneys' fees, expenses and medical liens.

---

[6] If the Court does not ultimately approve the settlement, it follows the procedure set forth in Kan. Stat. Ann. § 40-3411. See Kan. Stat. Ann. § 40-3410(d).

Pursuant to Kan. Stat. Ann. § 7-121b, the Court must also approve all attorney's fees. See Whittington, 2015 WL 224814, at *3. To do so, the Court must hold an evidentiary hearing to determine whether the fees are reasonable. See Kan. Stat. Ann. § 7-121b(a) (fees "shall be approved by the judge after an evidentiary hearing and prior to final disposition of the case by the district court"). To determine whether fees are reasonable, the Court examines the following factors:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation and ability of the attorney or attorneys performing the services; and
>
> (8) Whether the fee is fixed or contingent.

Id.

Here, the parties request the Court's approval for the attorneys' fees of plaintiff, the Wesley Defendants and the Via Christi Defendants.

As the Court noted above, the particular fee which plaintiff's attorneys request remains unclear. They assert that "a 40% fee is usual and customary for medical malpractice injury cases," but they do not proffer a specific dollar amount or explain whether this 40 per cent applies to the gross settlement amount. Exhibit B (Doc. #452-2) at 4. Additionally, plaintiff's attorneys fail to address most of the factors from Section 7-121b—they evaluate their experience and the

contingency fee, and then conclude with little discussion that "Docket filings 1-450 and substance therein clearly demonstrate the aforementioned Factors 1-7 have been met." Id. at 3. Absent full analysis, and particularly without knowing the total requested amount, the Court cannot approve the fee request. See Whittington, 2015 WL 224814, at *3 (deferred ruling on fees where parties failed to provide evidence on number of hours counsel expended on case). The parties' supplemental brief should also address these deficiencies.

The attorneys' fees for the Wesley Defendants and the Via Christi Defendants also require further explanation. They provide affidavits from attorneys who testify to the reasonableness of the fees and evaluate the relevant factors from Section 7-121b. See Diane Waters Affidavit (Doc. #452-3); Lawrence Logback Affidavit (Doc. #452-4). They do not, however, provide adequate records which show the hours and billing rates for individual attorneys and staff. The affidavits instead list total hours for all lawyers and paralegals and ranges of rates, followed by a total requested amount. The supplemental brief should include more detailed lodestar calculations which show the hours and rates for individual attorneys and staff.

**IT IS THEREFORE ORDERED that the Court will hold a telephonic hearing on August 6, 2020 at 11:00 A.M. to determine whether the proposed settlement is valid, just and equitable, and whether the attorneys' fees are reasonable. Parties are to join the hearing by calling (888) 363-4749 and entering access code 1654737. By July 27, 2020, the parties shall submit a supplemental brief which addresses the issues that the Court identified above.**

Dated this 20th day of July, 2020 at Kansas City, Kansas.

                                          s/ Kathryn H. Vratil
                                          KATHRYN H. VRATIL
                                          United States District Judge