## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| D.M., a minor by and through his next friend and natural guardian, KELLI MORGAN, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 18-2158-KHV |
| WESLEY MEDICAL CENTER, LLC d/b/a WESLEY MEDICAL CENTER-WOODLAWN, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

On September 11, 2018, D.M., a minor by and through his next friend, Kelli Morgan, filed an amended complaint against Wesley Medical Center, LLC d/b/a Wesley Medical Center-Woodlawn ("Wesley Medical Center"), Wesley-Woodlawn Campus, Lisa Judd, RN, Via Christi Hospitals Wichita, Inc. d/b/a Via Christi-St. Francis ("Via Christi"), Aaron Kent, RN, Bridget Grover, PA-C, Dr. Gregory Faimon, Jennifer Chambers-Daney ("Chambers-Daney"), ARNP, Dr. Bala Bhaskar Reddy Bhimavarapu, CEP America-KS LLC, Dr. Connor Hartpence, Dr. Stefanie White and Dr. Jamie Borick, alleging that defendants' medical malpractice caused him paralysis, neurological damage and other permanent injuries.  First Amended Complaint (Doc. #121); see Pretrial Order (Doc. #435) filed May 4, 2020.  This matter is before the Court on the Motion For Summary Judgment On Plaintiff's Claim For Punitive Damages Against Dr. Bala Bhaskar Reddy Bhimavarapu M.D. (Doc. #438) filed May 15, 2020.  For reasons stated below, the Court overrules the motion.

## Factual And Procedural Background

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.

On March 5, 2017 at 6:19 P.M., Kelli and Kevin Morgan brought plaintiff, their five-year-old son, to the Wesley Medical Center emergency room because of headaches, a sore throat, vomiting, fatigue and abdominal pain.  Wesley Medical Center diagnosed plaintiff with strep throat and discharged him at 7:06 P.M.

After returning home, plaintiff's symptoms continued to worsen, and on March 6, 2017 at 2:22 A.M., Kelli took plaintiff to the Via Christi emergency room.  At Via Christi, Kelli relayed plaintiff's worsening symptoms to Chambers-Daney, the nurse practitioner.  The chart which Chambers-Daney prepared stated the following:

> The patient presents with sore throat and PT HAS HAD A SORE THROAT FOR UNKNOWN TIME.  SISTER JUST HAD TONSILS OUT AND THE MOM WORRIES THAT HE [ ] WAS TOO AFRAID TO TELL THEM THAT HE MAY NEED HIS OUT TOO.  SEEN AT WESLEY THIS EVE 6PM DX STREP.  PT SENT HOME AND THEN MOM STATES HE HAS BEEN VOMITING EVERY HOUR AND NOT ABLE TO KEEP DOWN PAIN MEDS.  The onset was unknown.  The course/duration of symptoms is constant.  Location: Pharynx throat.  The character of symptoms is pain and redness. The relieving factor is none. Prior episodes: none. Associated symptoms: vomiting.

Emergency Documentation (Doc. #459-3) at 2 (emphasis in original).  The chart noted that Chambers-Daney did not perform a neurological examination.  At 5:02 A.M., Chambers-Daney consulted Dr. Bala ("defendant"), who admitted plaintiff for observation at 5:04 A.M.

After plaintiff's admission, Dr. Hartpence, who was a first-year family practice resident, met with plaintiff and charted the following: "On Sunday, pt complained of headache, dizziness, and worsening nausea and several episodes of emesis."  Id. at 8.  Dr. Hartpence then consulted defendant.  Although Dr. Hartpence does not recall the exact substance of their call, he testified that his custom, habit and routine was to communicate to defendant the contents of his notes.

According to Dr. Hartpence, this would have included the fact that plaintiff had worsening nausea and vomiting, headache and dizziness.  At the time, defendant did not diagnose plaintiff with elevated intracranial pressure, but he recognized that dizziness, weakness and balance issues are signs of such pressure, and that elevated intracranial pressure in a pediatric patient is an emergent situation which requires further neurological testing.  Dr. Hartpence and defendant ultimately agreed to defer plaintiff's neurological exam, however, and let plaintiff sleep.

At 10:00 A.M. on March 6, 2017—approximately eight hours after he arrived at Via Christi—Via Christi called a code blue for plaintiff.  Subsequent examination showed a mass in his brain.  Plaintiff alleges that he suffered a catastrophic stroke which caused paralysis, neurological damage and other permanent injuries.  According to plaintiff's expert, Dr. Jean Baptiste LePichon, headache, dizziness and nausea are atypical for strep throat, and should have triggered further testing.  In his report, Dr. LePichon also stated that the medical providers, including defendant, "failed in their ability to recognize the characteristic signs of increased intracranial pressure."  Dr. LePichon Report (Doc. #439-8) at 12.  According to Dr. LePichon, it is "basic medical knowledge" that headaches, nausea, emesis, ataxia and altered mental status are all symptoms of increasing intracranial pressure, and defendant should have asked more questions about these symptoms and ordered imaging.  Id.  Defendant testified that had he suspected elevated intracranial pressure, he would have performed a neurological exam and ordered imaging.

On September 11, 2018, plaintiff, through Kelli Morgan, filed an amended complaint.  See First Amended Complaint (Doc. #121).  Plaintiff claims that defendant was negligent by failing to do the following:

(1) consider a differential diagnosis that involved an intracranial process involving increased intracranial pressure;
(2) rule out a neurological problem as being the cause of plaintiff's complaints and presentation;

(3) conduct a more complete and adequate neurological examination of plaintiff;

(4) perform a proper physical examination;

(5) take a proper history of plaintiff's complaints and symptoms;

(6) obtain a proper history regarding plaintiff's headache;

(7) order immediate head imaging to rule out elevated intracranial pressure;

(8) order head imaging;

(9) order a head CT stat;

(10) perform and document a proper differential diagnosis;

(11) properly diagnose;

(12) diagnose elevated intracranial pressures;

(13) consider an intracranial process;

(14) obtain a neurological consultation;

(15) follow up on abnormal labs;

(16) obtain vital signs;

(17) follow up on abnormal vital signs;

(18) review the complete medical chart including the nursing notes and triage sheet;

(19) consider the complexity of plaintiff's condition;

(20) obtain a comprehensive history of plaintiff's symptoms from [Chambers-Daney];

(21) obtain a comprehensive history of plaintiff's symptoms and his physical and neurological condition from residents;

(22) personally examine plaintiff;

(23) ask additional questions regarding plaintiff's symptoms and condition including his headache, dizziness, nausea and vomiting; and

(24) ask questions about plaintiff's prior Wesley Medical Center-Woodlawn admission and his complaints leading to that admission.

Pretrial Order (Doc. #435) at 24–27.  Plaintiff seeks punitive damages from defendant.  Id. at 28.

## Legal Standards

Pursuant to Rule 56(a), Fed. R. Civ. P., a party may move for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine"

factual dispute requires more than a mere scintilla of evidence in support of the party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party does so, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51. In response to a motion for summary judgment, parties cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

## Analysis

Defendant asserts that he is entitled to judgment as a matter of law on plaintiff's claim for punitive damages.

Under Kansas law, plaintiff may recover punitive damages "to punish the wrongdoer for his malicious, vindictive or willful and wanton invasion of [plaintiff's] rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." Foster v. USIC Locating Servs., LLC, No. 16-2174-CM, 2018 WL 3575649, at *4 (D. Kan. July 25, 2018) (citations omitted).  To recover punitive damages, plaintiff must show by clear and convincing evidence that defendant acted with willful, malicious or wanton conduct.[1]  Id.; D.M. by & through Morgan v. Wesley Med. Ctr. LLC, No. 18-2158-KHV, 2019 WL 2448574, at *7 (D. Kan. June 12, 2019).  Wantonness refers to the "mental attitude of the wrongdoer rather than a particular act of negligence." P.S. ex rel. Nelson v. The Farm, Inc., 658 F. Supp. 2d 1281, 1303 (D. Kan. 2009) (citing Reeves v. Carlson, 266 Kan. 310, 314, 969 P.2d 252, 256 (1998)).  For his acts to be wanton, defendant "must realize the imminence of danger and recklessly disregard and be indifferent to the consequences of his [ ] act." Id.  The first prong—realizing imminent danger— does not necessarily mean that defendant knew that plaintiff's particular injury was imminent. See Holt v. Wesley Med. Ctr., LLC., No. 00-1318-JAR, 2004 WL 1636574, at *8 (D. Kan. July 19, 2004).  The Court instead asks whether based on defendant's knowledge of existing conditions, he was aware that his action or inaction "would likely or probably result" in the injury or other known risk or complication. Id.; see Reeves, 266 Kan. at 315 (based on defendant's knowledge of existing conditions, he was aware that conduct would likely or probably cause injury).  Plaintiff can

---

[1]       As best the Court can ascertain, plaintiff does not claim that defendant willfully or maliciously injured him.

circumstantially prove defendant's knowledge of imminent dangers.  Holt, 2004 WL 1636574, at *8.

As to the second prong—reckless disregard and indifference—Kansas law does not require plaintiff to establish "a formal and direct intention to injure any particular person.  It is sufficient if [ ] defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless."  P.S. ex rel. Nelson, 658 F. Supp. 2d at 1303 (citing Reeves, 266 Kan. at 315).  Recklessness is more than mere negligence, and requires conduct which shows "disregard of or indifference to consequences, under circumstances involving danger to life or safety of others."  Id.

The Court typically reserves the question of wantonness for the jury—only when reasonable persons "could not reach differing conclusions from the same evidence may the issue [of wantonness] be decided as a question of law."  Danaher v. Wild Oats Markets, Inc., 779 F. Supp. 2d 1198, 1213 (D. Kan. 2011) (citations omitted).

Here, defendant asserts that plaintiff cannot recover punitive damages because as a matter of law, his actions were not wanton.  Defendant argues that while the record may show negligence—that he should have taken certain actions—it falls short of proving that he knew the severity of plaintiff's condition and chose to disregard it.  At most, defendant argues, the evidence shows that defendant did not realize that plaintiff's symptoms were indicative of anything other than strep throat.  In other words, as best the Court can ascertain, defendant focuses his challenge on the first prong, arguing that he did not realize imminent danger.[2]  In support, defendant points to particular statements from plaintiff's experts that medical providers at Via Christi, including

---

[2]    Even if defendant does challenge the second prong, the Court finds that the record creates a genuine issue of material fact whether defendant was reckless and indifferent to the consequences of his inaction.

defendant, did not recognize signs of increased intracranial pressure.  See Dr. LePichon Report (Doc. #439-8) at 12.

The record creates a genuine issue of material fact whether defendant's actions constitute wanton conduct.  At his disposal, defendant had information from multiple different sources that after a strep throat diagnosis from a prior emergency room visit, plaintiff was experiencing worsening nausea, vomiting, headache and dizziness.  In particular, Chambers-Daney noted that since his visit to Wesley Medical Center, plaintiff had been vomiting every hour, with its onset unknown, and that he had not received a neurological exam.  See Emergency Documentation (Doc. #459-3) at 2.  Dr. Hartpence later documented that plaintiff "complained of headache, dizziness, and worsening nausea and several episodes of emesis."  Id. at 8.  Dr. Hartpence relayed this information to defendant over the phone, including specific information that plaintiff had worsening nausea and vomiting, headache, dizziness.  Dr. LePichon testified that headache, dizziness and nausea are atypical for strep throat, and should have triggered further testing.  Although Dr. LePichon's report states that defendant "failed in [his] ability to recognize the characteristic signs of increased intracranial pressure," it also states that it is "basic medical knowledge" that headaches, nausea, emesis, ataxia and altered mental status are all symptoms of increasing intracranial pressure—a fact to which defendant apparently subscribes.  Specifically, although defendant did not diagnose plaintiff as such, his motion leaves uncontested the fact that dizziness, weakness and imbalance are signs of elevated intracranial pressure, that elevated intracranial pressure in a pediatric patient is an emergent situation which demands neurological examination and that defendant was well aware of both facts.  Despite being aware of these facts, defendant chose to defer plaintiff's neurological examination.  On this record, a reasonable factfinder could conclude that given defendant's knowledge of existing conditions, he was aware

that his action or inaction "would likely or probably result" in plaintiff's injury or other known risk or complications.  Holt, 2004 WL 1636574, at *8.  Accordingly, a reasonable jury could find that defendant realized imminent danger, and was reckless and indifferent to the consequences of his inaction.  As to punitive damages, defendant is not entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that the Motion For Summary Judgment On Plaintiff's Claim For Punitive Damages Against Dr. Bala Bhaskar Reddy Bhimavarapu M.D. (Doc. #438) filed May 15, 2020 is **OVERRULED**.

Dated this 14th day of August, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge